IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 15-14132

JTR ENTERPRISES, LLC,
a Delaware Limited Liability Company,

*Plaintiff-Appellee,*

v.

YOUNG CONAWAY STARGATE & TAYLOR;
BRUCE L. SILVERSTEIN; PAUL D. SULLIVAN,

*Respondents-Appellees/Cross-Appellants*

v.

MOTIVATION, INC.

*Claimant-Appellant/Cross-Appellee*

## PRINCIPAL AND RESPONSE BRIEF OF APPELLEE/
## CROSS-APPELLANT PAUL D. SULLIVAN

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Stephen F. Rosenthal
Robert C. Josefsberg
John Gravante, III
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
305-358-2800/305-358-2382 (fax)
srosenthal@podhurst.com
rjosefsberg@podhurst.com
jgravante@podhurst.com

*Counsel for Appellee/
Cross-Appellant, Paul Sullivan*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

The Appellee/Cross-Appellant, Paul D. Sullivan, submits this list, which includes the trial judge, and all attorneys, person, associations or persons, firms, partnerships or corporations that have an interest in the outcome of this review:

**<u>Trial Judges</u>:**

King, James Lawrence, Southern District of Florida

Moore, K. Michael, Southern District of Florida

**<u>Attorneys of Record</u>:**

Coffey, Kenneth

Dorsey, John T.

Josefsberg, Robert C.

Gravante, III, John

Holloway, John E.

Lewis, A. Eugene

Morgan, Hugh J.

Rogerson, III, John T.

Rosenthal, Stephen F.

White, Marlow V.

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

**Other Persons:**

Abt, Taffi Fisher

Fisher, Kim H.

Fisher, Juanita L.

Silverstein, Bruce

Sullivan, Paul D.

**Corporations/Entities (None Traded Publicly):**

Coffey Burlington, P.L.

JTR Enterprises, LLC

Lewis & White, P.L.C.

Motivation, Inc.

Podhurst Orseck, P.A.

Young, Conaway, Stargatt & Taylor, LLP

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiff/Appellee states there are no corporate disclosures.

 s/ Stephen F. Rosenthal
Stephen F. Rosenthal

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# STATEMENT REGARDING ORAL ARGUMENT

Appellee/Cross-Appellant Paul Sullivan respectfully submits that oral argument is unnecessary for this Court to affirm the district court's order rejecting Appellant/Cross-Appellee's Motivation, Inc.'s ("Motivation") motion to impose sanctions against Sullivan pursuant the court's inherent authority. The district court reached that law-applied-to-fact conclusion after presiding over a bench trial at which, the court found, Motivation failed to carry its high burden of proof for sanctions against a non-party (clear and convincing evidence). Motivation devotes a scant two paragraphs of its brief to its scarcely developed argument in support of its appeal of the ruling regarding Sullivan, focusing instead on its independent claim against co-Appellee, Bruce Silverstein. The main appeal as to Sullivan raises the kind of issue which this Court can readily assess, from the briefs alone, plainly lacks merit.

Sullivan's cross-appeal, however, is a different story. It presents legal and factual intricacies as to which the Court may find oral argument helpful. Unlike the appeal as to Sullivan, which rises and falls on a failure of proof, and a distinct truncated record, Sullivan's cross-appeal implicates a broader chapter of the record. Should the Court deem oral argument to be appropriate only as to the cross-appeal, Sullivan wishes to preserve the opportunity to present argument on

i

his behalf.  *See* Fed. R. App. P. 34(d) (court may direct that oral argument is granted only to an initial appeal or cross-appeal).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

STATEMENT OF JURISDICTION..................................................................1

ISSUES ON MAIN APPEAL ........................................................................1

ISSUE ON CROSS-APPEAL.........................................................................2

STATEMENT OF THE CASE ........................................................................3

COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT
BELOW....................................................................................................3

     A.     The Underlying Admiralty Action .........................................4

     B.     The JTR/Miscovich Sanctions Trial ("Sanctions I") ............4

     C.     The Silverstein/YCS&T/Sullivan Sanctions Trial
          ("Sanctions II")......................................................................5

     D.     The Continued Silverstein Sanctions Trial ("Sanctions
          III")......................................................................................6

     E.     Sullivan's Motion for Sanctions Against Motivation and
          Its Counsel (Cross-Appeal) ..................................................6

STATEMENT OF THE FACTS. .......................................................................8

     A.     Facts Pertinent to Motivation's Appeal Regarding
          Sullivan...............................................................................14

     B.     The District Court's Ruling for the Main Appeal ................15

     C.     Facts Pertinent to Sullivan's Cross-Appeal........................17

STANDARDS OF REVIEW ........................................................................17

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

A.     Motivation's Appeal of the Order Dismissing Its Sanctions Claim Against Sullivan .......................................17

B.     Sullivan's Cross-Appeal of the Order Denying Its Motion for Sanctions.........................................................17

## MAIN APPEAL

SUMMARY OF ARGUMENT ...........................................................18

ARGUMENT ....................................................................................19

I.     THE ORDER DISMISSING MOTIVATION'S CLAIM AGAINST SULLIVAN SHOULD BE AFFIRMED BECAUSE THE DISTRICT COURT LACKED JURISDICTION OVER HIM. ..............................................................19

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DISMISSED MOTIVATION'S SANCTIONS CLAIM AGAINST SULLIVAN. .............22

    A.     The Legal Framework Governing Inherent-Power Sanctions. ............................................................22

    B.     Motivation Failed to Show That Sullivan Acted in Bad Faith.........................................................................26

    C.     The District Court Did Not Abuse Its Discretion in Finding That Motivation Failed to Prove That Sullivan Substantially Participated in the Litigation. .......................................29

       1.     Reliance on Sullivan's testimony in the Sanctions I trial cannot, and does not, support Motivation's argument................................................32

          a.     Sullivan's testimony from the Sanctions I trial is not part of the record of the Sanctions II trial. ..........................................33

          b.     Motivation mischaracterizes Sullivan's prior testimony......................................................34

**Podhurst Orseck, P.A**.

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

2.  Sullivan's conversations with Horan do not prove that Sullivan knew about or furthered the fraud. ......................35

3.  Horan's August 30, 2012 email does not support Motivation's argument. ..............................................38

4.  Sullivan's status as a member of JTR's Advisory Board does not prove he participated in the litigation. ..................................................................40

5.  Even if the evidence Motivation references only in the facts section of its brief were considered, it would not alter the result. .........................................41

D.  The District Court Did Not Abuse Its Discretion in Finding That Motivation Failed to Prove Sullivan's Substantial Interest in the Litigation. .................................47

CONCLUSION ..................................................................48

## CROSS APPEAL

SUMMARY OF ARGUMENT ...........................................................48

ARGUMENT ..............................................................................50

I.  THE DISTRICT COURT ABUSED ITS DISCRETION BY INCORRECTLY APPLYING THE LAW GOVERNING SULLIVAN'S SANCTIONS MOTION. .............50

A.  Sullivan's Dual Theories of Bad-Faith. .............................51

B.  The District Court Misapplied the Law in Dismissing Sullivan's Principal Theory of Motivation's Bad-Faith. ...................53

C.  The District Court Overlooked Sullivan's Subsidiary Theory of Bad-Faith Directed at Motivation's Counsel. ...................57

CONCLUSION ..................................................................60

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**Podhurst Orseck, P.A**.

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# TABLE OF AUTHORITIES

PAGE

## CASES

*Amlong & Amlong, P.A. v. Denny's, Inc.*,

    500 F.3d 1230 (11th Cir. 2006) ....................................................................60

*Barash v. Kates*,

    585 F. Supp. 2d 1347 (S.D. Fla. 2006) ........................................................26

*Barnes v. Dalton*,

    158 F.3d 1212 (11th Cir. 1998) ...................................................22, 23, 52, 53

*Chambers v. NASCO, Inc.*,

    501 U.S. 32 (1991)......................................................................22, 23, 26, 53

*E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*,

    896 F.2d 524 (11th Cir. 1990) ....................................................................24

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*,

    377 F.3d 1164 (11th Cir. 2004) ...................................................................8

\*   *Helmac Products Corp. v. Roth (Plastics) Corp.*,

    150 F.R.D. 563 (E.D. Mich. 1993) ...................................................24, 25, 38

*Ledford v. Peeples*,

    605 F.3d 871 (11th Cir. 2010) .....................................................................41

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

*Little v. T-Mobile USA, Inc.*,

    691 F.3d 1302 (11th Cir. 2012) ....................................................34

*In re Moore*,

    739 F.3d 724 (5th Cir. 2014) ......................................................26

*In re Mroz*,

    65 F.3d 1567 (11th Cir. 1995) ...............................................23, 53

*Matthews v. Gaither*,

    902 F.2d 877 (11th Cir. 1990) ....................................................32

*Mayer v. Wall St. Equity Grp., Inc.*,

    672 F.3d 1222 (11th Cir. 2012) .....................................................1

*Mendoza v. U.S. Att'y Gen.*,

    327 F.3d 1283 (11th Cir. 2003) ...................................................28

*Nat'l Alliance for the Mentally Ill, St. John Inc. v.*

    *Bd. of Cty. Comms. of St. John's Cty.*,

    376 F.32d 1292 (11th Cir. 2004) .................................................29

\*   *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*,

    353 F.3d 916 (11th Cir. 2003) ..........................................17, 20, 21

*Renteria-Marin v. Ag-Mart Produce, Inc.*,

    537 F.3d 1321 (11th Cir. 2008) ........................................17, 32, 47

viii

**Podhurst Orseck, P.A**.

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

*Sapuppo v. Allstate Floridian Ins. Co.*,

    739 F.3d 678 (11th Cir. 2014) ...............................................................*passim*

\*   *Sciarretta v. Lincoln Nat. Life Ins. Co.*,

    778 F.3d 1205 (11th Cir. 2015) ..........................................................*passim*

*Sciarretta v. Lincoln Nat'l Life Ins. Co.*,

    No. 9:11-cv-80427-DMM, 2013 WL 11316858

    (S.D. Fla. May 6, 2013) ..........................................................................24, 25

*United States v. Gilbert*,

    198 F.3d 1293 (11th Cir. 1999) ............................................................52, 55

*United States v. Gregg*,

    179 F.3d 1312 (11th Cir. 1990) ...................................................................32

*United States v. Jernigan*,

    341 F.3d 1273 (11th Cir. 2003) ............................................................29, 42

*Weissinger v. U.S.*,

    423 F.2d 795 (5th Cir. 1970) ...........................................................7, 42, 47

*Williams v. Obstfeld*,

    314 F.3d 1270 (11th Cir. 2002) ...................................................................23

## RULES

Fed. R. App. P. 4(a)(3)...............................................................................1

Fed. R. App. P. 28(a)(6)..............................................................................8

**Podhurst Orseck, P.A.**

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

Fed. R. App. P. 28(a)(9)(A) ...................................................................28

Fed. R. App. P. 34(d) ......................................................................... ii

11th Cir. R. 28-1(i) ...........................................................................20

Fed. R. Civ. P. 4.1(a)..............................................................19, 20, 21

Fed. R. Civ. P. 28(i) ..........................................................................20

Fed. R. Civ. P. 41(a)(1) .....................................................................32

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# STATEMENT OF JURISDICTION

Appellee/Cross-Appellant Sullivan challenges the court's jurisdiction over his person with respect to Motivation's appeal based on legally invalid service of the Order to Show Cause. Sullivan, however, is satisfied that this Court has appellate jurisdiction. *See* page 19, *infra*.

Although Appellant/Cross-Appellee Motivation waited more than thirty days to appeal the district court's order denying sanctions as to Sullivan (Doc. 528) (issued and entered on the docket on December 2, 2014), that post-judgment order likely did not become final until the district court disposed of Motivation's motion for sanctions against Bruce Silverstein, which did not occur until August 17, 2015 (Doc. 592). *See Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012).

Consequently, Sullivan's cross-appeal of the order denying his motion for sanctions was timely filed, since he noticed the cross-appeal within fourteen days of Motivation's appeal. *See* Fed. R. App. P. 4(a)(3).

# ISSUES ON MAIN APPEAL

I. WHETHER THE DISTRICT COURT LACKED JURISDICTION OVER SULLIVAN.

II. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN GRANTING SULLIVAN'S MOTION FOR INVOLUNTARY DISMISSAL OF MOTIVATION'S SANCTIONS CLAIM FOR MOTIVATION'S FAILURE TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT

1

SULLIVAN SUBSTANTIALLY PARTICIPATED OR HAD A SUBSTANTIAL INTEREST IN THE LITIGATION.

III. WHETHER THE DISTRICT COURT'S RULING SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT MOTIVATION FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT SULLIVAN ENGAGED IN BAD-FAITH CONDUCT.

## ISSUE ON CROSS-APPEAL

I. WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION IN PREMATURELY DISMISSING SULLIVAN'S MOTION FOR SANCTIONS AGAINST MOTIVATION AND ITS COUNSEL WITHOUT CONSIDERING CRITICAL ELEMENTS OF HIS CLAIMS.

## STATEMENT OF THE CASE

Motivation's appeal concerning the order denying its sanctions claim against Sullivan (Doc. 528) involves a cul-de-sac off the main avenues of sanctions litigation spawned by fraud committed in an underlying treasure-salvage proceeding. After the district court determined that Motivation was entitled to sanctions against JTR Enterprises, LLC ("JTR") and its principal, Jay Miscovich, for their having drawn Motivation into admiralty litigation over the ownership rights to what turned out to be an entirely fake sunken treasure, Motivation turned its sights to solvent non-parties from whom it might recoup the attorney's fees and costs it wasted in the admiralty litigation. Sullivan was one such individual, who happened to have what Motivation and its attorneys opportunistically called "deep pockets." Motivation's effort to pin blame for Miscovich's fraud on Sullivan ran

2

into a dead end after a bench trial during which the district court concluded that Motivation had failed to meet its high burden of proof.

Separately, Sullivan cross-appeals the district court's subsequent denial of his own motion for sanctions against Motivation and its counsel. The district court prematurely dismissed Sullivan's meritorious sanctions claims summarily and in so doing failed to address several critical elements of those claims. As described below, Sullivan's cross-appeal implicates a different record than the narrower one pertinent to Motivation's main appeal.

## COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

### A.      The Underlying Admiralty Action

The underlying case originated with JTR's filing, through Miscovich, of an *in rem* admiralty action seeking a salvage award or title to a supposed treasure cache of emeralds and other gems that Miscovich and his diving partner, Steve Elchlepp, purported to have found in the Gulf of Mexico off of the coast of the Florida Keys. (Doc. 1). Motivation, a treasure salvage company in Key West, filed a claim in JTR's action, asserting its potential ownership interest in the treasure. (Doc. 10). Prior to trial in the admiralty case, Motivation withdrew its claim to the treasure, but remained a party in the case pursuant to the district court's order. (Doc. 118, 121, 194). The district court (King, J.) held a bench trial over several days in December 2012 and concluded that JTR had failed to establish

3

its rights to either a salvage award or title to the emeralds, ordering that the "treasure" be returned to Miscovich and Elchlepp.  (Doc. 199).

### B.    The JTR/Miscovich Sanctions Trial ("Sanctions I")

On August 27, 2012, prior to the admiralty trial, Motivation moved for sanctions against JTR and Miscovich.  (Doc. 123).  The district court (Moore, J.) held a three-day evidentiary hearing on that motion beginning on January 13, 2014.[1]  At the conclusion of the hearing, the district court determined that JTR's admiralty action had been brought and maintained in bad faith principally at the orchestration of Miscovich's fraudulent conduct, and thus issued sanctions against JTR and Miscovich.[2]  (Doc. 445).

### C.    The Silverstein/YCS&T/Sullivan Sanctions Trial ("Sanctions II")

Motivation then filed an Amended Motion for Sanctions on February 28, 2014, asserting additional sanctions claims against three non-parties, Bruce Silverstein, his law firm Young Conaway Stargatt & Taylor ("YCS&T"), and Sullivan.  (Doc. 407).  Sullivan opposed the motion arguing that it lacked any factual foundation and was brought in bad faith to get to Mr. Sullivan's "deep pockets."  (Doc. 437).  The district court entered an Order to Show Cause on

---

[1] Judge Moore presided over the sanctions proceeding against JTR and Miscovich during Judge King's absence.  Judge King returned to preside over all other proceedings relevant to this appeal.

[2] Miscovich had committed suicide in October 2013, so the sanctions against him were entered against his estate.

4

Motivation's motion (Doc. 451), which Sullivan sought to have quashed and set aside (Doc. 457). The district court denied Sullivan's motion and set the matter for a final evidentiary hearing. (Doc. 488).

The second sanctions trial – against Silverstein, YCS&T and Sullivan – began on November 19, 2014. (T. Day 1).[3] After two days of testimony in which Motivation presented its case-in-chief and rested, Sullivan moved for involuntarily dismissal based on the absence of any evidence showing that he substantially participated in the admiralty litigation or in Miscovich's or JTR's bad-faith conduct. (T. Day 4 at 62-76).

In a written order issued on December 2, 2014, the district court dismissed with prejudice Motivation's claim for sanctions against Sullivan, finding that "[n]o evidence was presented as to Paul Sullivan's interest, financial or otherwise, in the outcome of this case or his direction or control over the litigation." (Doc. 528 at 3). The district court also dismissed with prejudice the claim against YCS&T in this same order. (*Id.* at 4-5).

## D.    The Continued Silverstein Sanctions Trial ("Sanctions III")

The district court denied Silverstein's motion for dismissal,and on December 4, 2014, resumed the trial with Silverstein's presentation of evidence in his defense. The continued trial against Silverstein ran through December 16, 2014.

---

[3] The trial transcripts ("T.") are numbered sequentially by day of trial on their cover pages. They are located in the record at Docs. 543-552, 554.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

The district court ultimately dismissed Motivation's sanctions claim against Silverstein in a separate, lengthy order (Doc. 568), which is the subject of Motivation's appeal involving Silverstein.

### E. Sullivan's Motion for Sanctions Against Motivation and Its Counsel (Cross-Appeal)

After being dismissed from Motivation's sanctions proceedings, Sullivan moved for an award of sanctions against Motivation and its counsel, Eugene Lewis. (Doc. 555). Motivation and Lewis filed their response on January 30, 2015 (Doc. 563), and Sullivan filed his reply on February 9, 2015 (Doc. 566). The district court entered its order denying Sullivan's motion as to both Motivation and Lewis on June 5, 2015 (Doc. 588). On September 28, 2015, Sullivan filed his cross-appeal as to the district court's denial of his motion for sanctions against Motivation and its counsel (Doc. 597), as well as the denial of his motion to quash. (Doc. 488).

## STATEMENT OF THE FACTS

It is necessary at the very outset to clarify the proper bounds of the limited record applicable to Motivation's appeal of the order denying its sanctions claim against Sullivan. The statement of facts in Motivation's brief, which sprawls over 32 pages, makes no effort to distinguish the distinct evidentiary records applicable to different trials, which involved different parties and non-party respondents. Perhaps because Motivation's brief focuses almost exclusively on its claims

6

against Silverstein, Motivation commingles evidence that was presented *after* the claim against Sullivan had already been dismissed, even in support of Motivation's sparse arguments directed at Sullivan. That evidence was obviously *not* before the district court at the time that it granted the equivalent of a directed verdict against Motivation, so it is improper to attempt to rely upon it, after the fact, in support of an argument that the district court abused its discretion. *See Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir. 1970) (en banc) ("evidence not admitted at the time defendant's motion [for involuntary dismissal] was sustained" is not applicable upon review of the order).

Because Motivation failed to do so, Sullivan now recounts the limited evidence bearing upon the district court's order rejecting Motivation's sanctions claim against him. This restricted record pertains to what Motivation identifies as "Issue D" at the end of its brief. (Motivation Initial Brief ("M.Br.") at 55-57). As the district court noted (Doc. 528 at 2), the only evidence Motivation presented in support of its claim against Sullivan came from the three witnesses who testified during the first two days of the Sanctions II trial (November 19-20, 2014), plus some 54 exhibits admitted in evidence before Motivation rested its case against Sullivan on November 20, 2014. (Docs. 528, 542 (Court's Official Exhibit and Witness List)). The testimony of the three witnesses and the exhibits admitted on

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

or before November 25, 2014 comprise the *entirety* of the record at issue in Motivation's appeal regarding Sullivan.  (*See* T. Day 5 at 26, 31).

Before sketching those facts, we also note that Motivation invites the Court to consider the "more detailed statement" of facts set forth in the proposed findings of fact and conclusions of law it filed in the district court, beyond what it deems the "abbreviated statement of the facts" it presents in its brief.  (M.Br. at 5).  This invitation is in appropriate for two reasons.  As a procedural matter, such incorporation by reference violates basic rules on appellate briefing.[4] Substantively, the additional evidence to which Motivation directs the Court would be doubly inappropriate to reference with respect to Sullivan, since that evidence was introduced during  seven days of additional testimony after the sanctions claim against Sullivan had already been dismissed.  Thus, the Court should disregard any facts or arguments not raised by Motivation in the four corners of its brief.

### A.      Facts Pertinent to Motivation's Appeal Regarding Sullivan

The district court held a bench trial beginning on November 19, 2014 on Motivation's claim for sanctions against Sullivan, Silverstein, and YCS&T. (T.

---

[4] *See* Fed. R. App. P. 28(a)(6) (requiring an appellant to "set[] out the facts relevant to the issues submitted for review . . . with appropriate references to the record"); 11th Cir. R. 28-1(i) (requiring such precision); *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 (11th Cir. 2004) ("reject[ing] the practice of incorporating by reference arguments made to district courts").

8

Day 1).  Motivation presented only three witnesses[5] and submitted numerous strings of email communications before resting its case against Sullivan (and Silverstein and YCS&T) on November 20, 2014.  (T. Day 2 at 344).

Jorge Rodriguez, a jeweler from Jupiter, Florida was the first witness Motivation called.  He testified that he had prior business dealings with Miscovich beginning in February 2010 when he sold two rings to him.  (T. Day 1 at 31, 34). According to Rodriguez, Miscovich came back in March, May, and September 2010 and purchased approximately 20 pounds of rough and crystal emeralds for $20,000 at each visit.  (*Id*. at 35, 36).  He had never discussed Miscovich's purchase of emeralds with anyone else prior to his testimony in the JTR/Miscovich (Sanctions I) trial.  (*Id*. at 40).

Motivation's next two witnesses were David Horan and John Siracusa, the attorneys who represented JTR in the admiralty litigation.  We reprise their relevant testimony regarding Sullivan.  Horan, an admiralty attorney in Key West, Florida, testified that Silverstein and Miscovich contacted him on behalf of JTR to request his representation with regards to a salvage claim, which he agreed to do. (*Id*. at 42, 45).  During the time he represented JTR, Horan had a number of conversations with Sullivan in which they both questioned the emeralds' origins and how they were "going to find out and unravel the mystery of where these

---

[5] The district court excluded Motivation's fourth witness, Kim Fisher, from testifying.  (T. Day 2 at 344).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

emeralds came from." (*Id*. at 76). According to Horan, Sullivan "was very, very much in assistance with me to get to the bottom of that." (*Id*.). They had "conservatively, a hundred hours of conversations . . . trying to get to the bottom of it." (*Id*.).

Horan added that after Motivation filed a claim to the treasure in the admiralty proceedings in October 2011, Sullivan was "in league" with him to have a local expert look at the emeralds to determine whether they came from the *Atocha* or the *Santa Margarita* shipwrecks (*id.* at 80), and supported "turning [the emeralds] over" to Motivation (*id*. at 127). Based on Horan's recommendation, JTR sent some of the emeralds to labs in Switzerland and France to be tested to determine from which mines in Colombia they originated. (*Id*. at 82-83). When preliminary results came back from the Swiss and French labs in late 2011 that there was a modern epoxy on the emeralds, Horan advised JTR that they should notify the court immediately because of the inconsistency with the original status report which had indicated the emeralds could possibly have been from an ancient wreck. (*Id*. at 102). Sullivan "supported [Horan] from the git-go" (*id*. at 128), agreeing that "we should go ahead and immediately inform the court as to what the discovery was" by filing a second status report. (*Id*. at 103).

Horan testified, however, that he needed JTR's authority before filing reports and that JTR adhered to the wishes of Silverstein. (*Id*. at 118). Although

10

he initially had problems getting permission to file a second status report, he eventually did so, informing the court that JTR would file another report with the final test results. (*Id*. at 117). Horan also expressed having a hard time filing the third status report which he and Silverstein revised several times. (*Id*. at 119, 120; Ex. M2-9 (Motivation's App'x ("M. App'x") No. 41) at Bates p. 000072-75). Horan testified that he "could rely on" Sullivan "to support my decision with regard to my obligation to the court." (T. Day 1 at 127.) He also saw Sullivan as a sort of "referee" between himself and Silverstein with whom Horan did not always get along. (*Id.*; Ex. M1-3 (M. App'x No. 22)).

On August 30, 2012, Horan emailed Sullivan to confide in him that he intended to withdraw from representing JTR for several reasons as outlined in the email. (T. Day 1 at 50; Ex. M1-4 (M. App'x No. 23)). He explained that in "hindsight" a number of "surprises" from Miscovich over time convinced him of his need to withdraw. (T. Day 1 at 56).

The third witness, John Siracusa, was hired on about February or March 2012 to also represent JTR in the admiralty litigation. (T. Day 2 at 218). He was introduced to Sullivan as a member of JTR's advisory committee. (*Id*.). Siracusa testified that Sullivan gave his thoughts to Miscovich on some items but never directed, controlled or supervised the litigation, nor did he ever direct Siracusa to file or not file any pleadings in the case. (*Id*. at 271.)

11

During his representation of JTR before the admiralty trial, Siracusa hired a gemologist to inspect some of the emeralds (*id*. at 225), focused on getting all of the *res* back to Key West (*id*. at 235), made the emeralds available to Motivation for inspection (*id*. at 236), and made a couple of dives at the treasure site (*id*. at 236-38). Siracusa eventually advised Sullivan (and Silverstein) in October 2013 that he had to withdraw because he "did not have faith" in Miscovich as a client. (*Id*. at 261). The district court, however, denied his request to withdraw, requiring Siracusa to represent JTR at the Sanctions I bench trial in January 2014. (*Id*. at 262).

Siracusa testified that on the first night of the JTR/Miscovich sanctions trial, he, Sullivan, and others learned for the first time that Rodriguez intended to offer different testimony than what he had previously told Siracusa's paralegal, which was that Miscovich had purchased only two emerald rings from his store. (*Id*. at 262-63). Before that time, Siracusa had no reason to doubt Rodriguez's original statements to his paralegal. In response to Siracusa's earlier subpoena, Rodriguez had produced only the two receipts for those rings. (*Id*.) Siracusa also had spoken with Rodriguez's attorney after Miscovich's death, not long before this sanctions hearing, who also assured him that Miscovich had purchased only the two rings. (*Id*.).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

On that Monday evening of the first day of the sanctions trial, Rodriguez's attorney called Christie Janssen, another attorney working with Siracusa on the case. (*Id*. at 263). Rodriguez's attorney informed her that Rodriguez previously had lied to Siracusa's paralegal "and that Jay Miscovich had actually bought a bunch of emeralds from his store." (*Id*.). Sullivan was present during this phone call and, along with Siracusa and the others present, had "almost an instantaneous decision . . . that [they] needed to have this man come down. Regardless of what he was going to testify to, he needed to come tell the judge what happened." (*Id*. at 271). Sullivan and the others insisted that Rodriguez come and testify. (*Id*.). When Sullivan and the others went to dinner that same evening, Sullivan made a toast to the effect that "no matter how much this is going to hurt in the next few days, you are going to look back on this for the rest of your lives and you are going to be glad that you did the right thing, so it was a gift." (*Id*. at 272).

After the conclusion of Siracusa's testimony and moving to admit various email exhibits, Motivation rested its case against Sullivan, Silverstein, and YCS&T (*id*. at 344), all of whom moved for involuntary dismissal of the claims against them. (*Id*. at 345 (Silverstein); T. Day 4 at 62 (Sullivan)). The district court heard argument on the individual motions for dismissal over the course of three days. (T. Days 2-5).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Sullivan argued that Motivation failed to prove any one of the three legal elements necessary to the court's exercise of its inherent power to sanction Sullivan, a non-party. (T. Day 4 at 62-77). In its response, Motivation relied on only five email strings of the dozens of email communications it submitted in evidence. (T. Day 5 at 44, 47, 50, 52, 53; *respectively* Exs. M1-16; M1-4, M1-3, M2-58, and M1-33).[6] As the district court noted during the argument (T. Day 5 at 46, 54), some of these emails only showed that Sullivan's email address was copied. In reply, Sullivan's counsel reminded the district court that the two witnesses who mentioned Sullivan testified that he was a "truth seeker." (*Id.* at 65).

About one week later, on December 2, 2014, the district court entered its written order dismissing with prejudice Motivation's claim for sanctions against Sullivan and YCS&T. (Doc. 528). The district court denied Silverstein's motion for dismissal and resumed the trial against him on December 4, 2014.

## B.     The District Court's Ruling for the Main Appeal

In dismissing Motivation's claim against Sullivan, the district court made the following written findings of fact:

> With respect to the evidence presented by Motivation during their case in chief against Respondent Paul Sullivan, it is noted that

---

[6] Of these, on appeal, Motivation relies only on Ex. M1-33. The other two emails that were admitted in evidence during Motivation's case and on which Motivation relies in its appeal against Sullivan are Ex. M1-19 and Ex. M2-9.

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

only two of the [three] witnesses, Attorneys David Horan and John Siracusa, mentioned Mr. Sullivan at all. Both witnesses testified that Paul Sullivan, their opinion, *had nothing to do with the fraud* committed on the Court, that he did not control the litigation or direct the filing of any pleadings in this case, *that he labored only to seek the truth* concerning the origin of the emeralds, and that upon learning of the testimony of the Jupiter jeweler, Mr. Rodriguez, he was one of those that insisted that these facts be brought to the Court's attention as soon as possible.

The documentary evidence presented by Motivation, in the form of forty-three emails and email chains, shows only that Paul Sullivan's email address was copied—along with those of many others from whom no sanctions have been sought—on communications between JTR's counsel and others. Motivation pointed specifically to five email chains as implicating Paul Sullivan, only two of which contained any response at all from Paul Sullivan. No evidence was presented as to Paul Sullivan's interest, financial or otherwise, in the outcome of this case or his direction or control over the litigation.

(Doc. 528 at 3) (emphasis added).

## C.    Facts Pertinent to Sullivan's Cross-Appeal

After the district court's dismissal finding that Sullivan had nothing to do with the fraud and that there was no evidence of his interest or participation in the litigation, Sullivan moved for an award of sanctions against Motivation and its counsel, Eugene Lewis, for their bad-faith conduct in pursuing their failed sanctions claim against him. (Doc. 555). The basis for Sullivan's contention that Motivation and its counsel acted in bad faith was two-fold: (1) Motivation's sanctions claim against him was frivolous in that Motivation and its counsel knew that it "was without basis in law or fact" (*id.* at 1, 7); and (2) Motivation and its

15

counsel's pursuit of that frivolous claim was carried out in a vexatious and knowingly, or at least recklessly, deceitful manner (*id.* at 8-11).

Sullivan pointed out that Motivation's claim was frivolous because it knew long before the Sanctions II bench trial that its two witnesses, Horan and Siracusa, would testify that Sullivan had nothing to do with Miscovich's fraud and that he did not direct or have an interest in the litigation. (*Id.* at 7-8). The district court's finding that Motivation presented "no evidence" to establish Sullivan's substantial involvement in the litigation confirmed the insufficiency of the few emails Motivation relied on in a feeble attempt to overcome the witnesses' unequivocal testimony. (*Id.* at 8).

On its alternative theory of Motivation's and its counsel's bad-faith conduct, Sullivan pointed out several instances of their blatant and repeated misrepresentations of the evidence in its motion papers related to its sanctions claim against Sullivan. (*Id.* at 8-10). As further evidence of Motivation's and its counsel's vexatious litigation tactics, Sullivan presented numerous emails which revealed Motivation's and its counsel's malicious intent in pursuing sanctions against Sullivan, namely to get at his "deep pockets." (*Id.* at 11).

Without holding a hearing, the district court rejected both of Sullivan's theories of Motivation's bad-faith litigation conduct, declining to exercise its discretion to sanction Motivation under the courts' inherent powers. (Doc. 588).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

## STANDARDS OF REVIEW

### A. Motivation's Appeal of the Order Dismissing Its Sanctions Claim Against Sullivan

This Court reviews the district court's exercise of its inherent power to impose sanctions for an abuse of discretion. *See Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015). "An abuse of discretion occurs when the district court 'applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Id.* And the Court "review[s] factual findings made by a district court after a bench trial for clear error, which is a *highly deferential* standard of review." *Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324 (11th Cir. 2008) (emphasis added).

This Court reviews the district court's interpretation of the sufficiency of service of process *de novo*. *See Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries,* 353 F.3d 916, 920 (11th Cir. 2003).

### B. Sullivan's Cross-Appeal of the Order Denying Its Motion for Sanctions

The district court's denial of Sullivan's motion for sanctions against Motivation and its counsel is reviewed for abuse of discretion. *Sciarretta,* 778 F.3d at 1212.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

# MAIN APPEAL

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Motivation's sanctions claim against Sullivan, a non-party to the underlying admiralty litigation, where none of the witnesses or documentary evidence Motivation presented established that Sullivan acted in bad faith or substantially participated in or had a substantial financial interest in JTR's admiralty litigation. Seemingly recognizing the paucity of evidence to support its claims against Mr. Sullivan, Motivation allocates merely two paragraphs in its 57-page brief to its wholly unpersuasive argument that the district court erred in dismissing its claim against Sullivan. (M.Br. at 39, 55.) Motivation never substantiates its conclusory assertion that "substantial" or "copious" evidence supports its claim with the actual record evidence that supposedly exists. These breezy allegations are belied by the record. Motivation's own witnesses at the evidentiary hearing—JTR's two former attorneys in the admiralty proceedings—unequivocally testified that Sullivan was only interested in getting to the truth, had nothing to do Miscovich's fraud, and did not play an active, let alone substantial, role in the litigation. Likewise, the majority of email evidence that Motivation submitted as evidence during its case-in-chief shows for the most part that Sullivan was merely a passive recipient during the exchange of information between Miscovich and JTR's various attorneys.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

The Court need not even undertake any of the above analysis if it is persuaded that the service upon Sullivan at his home in Hawaii was legally invalid from the outset. The applicable rule limited service of process of the district court's Order to Show Cause to "the territorial limits of the state where the district court is located." Fed. R. Civ. P. 4.1(a).

## ARGUMENT

### I. THE ORDER DISMISSING MOTIVATION'S CLAIM AGAINST SULLIVAN SHOULD BE AFFIRMED BECAUSE THE DISTRICT COURT LACKED JURISDICTION OVER HIM.[7]

Motivation instituted its satellite sanctions proceedings against Sullivan, a non-party to the underlying admiralty litigation, by requesting the district court to issue Sullivan an Order to Show Cause. The district court did so (Doc. 451), and had the U.S. Marshal serve the order upon Sullivan at his home in Hawaii. Sullivan challenged the validity of this service as beyond the district court's jurisdiction over a non-party located outside of Florida. (Doc. 457). In denying Sullivan's motion to quash, the district court erred in concluding that the service on Sullivan beyond the "territorial limits" of Florida satisfied the requirements of the

---

[7] Because the denial of Sullivan's motion to quash service, which challenged the district court's jurisdiction over him, was an adverse ruling, Sullivan noticed that order (Doc. 488) in his cross-appeal. The denial, however, raises a threshold question of the district court's jurisdiction to exercise its inherent powers over Sullivan, the resolution of which is relevant to the main appeal.

19

applicable rule of civil procedure and due process simply because Sullivan received notice.   (Doc. 488 at 3).[8]

Pursuant to Federal Rule of Civil Procedure 4.1(a), service of process of matters other than a summons or subpoena must be served by a U.S. Marshal "within the territorial limits of the state where the district court is located."[9] Service of process is the means by which a court asserts its jurisdiction over a person.  As this Court has explained, "an individual or entity is not obliged to engage in litigation unless [officially] notified of the action . . . under a court's authority by formal process." *Prewitt Enters.*, 353 F.3d at 925.

This Court has declined to "liberally construe the formal requirements for service under the Federal Rules because [an entity] received actual notice," *id.* at 924-25, the very basis on which the district court concluded that service on Sullivan satisfied due process for purposes of jurisdiction.  Instead, this Court held, in the analogous context of service of a summons under a provision of Rule 4, that:

---

[8] Silverstein and YCS&T likewise challenged the district court's jurisdiction on the same grounds both below and in their motion papers on appeal.  (*See* Doc. 459; Appellee's Joint Mot. to Dismiss Appeal, filed Nov. 24, 2015).  Sullivan hereby incorporates by reference Silverstein's arguments on this issue found at Section III, pp. 17-20 of his motion. *See* Fed. R. App. P. 28(i).

[9] Service beyond those limits must be authorized by federal statute. Fed. R. Civ. P. 4.1(a).  Neither Motivation nor the district court has identified any such applicable statute, and Sullivan is aware of none.

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

> [d]ue process under the United States Constitution requires that before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant . . . [t]here also must be a *basis* for the defendant's amenability to service of summons. Absent consent, this means there must be *authorization* for service of summons on the defendant.

*Id.* (Court's emphasis). This Court in *Prewitt*, therefore, concluded that even though the intended defendant had "actual notice of the filing of the suit, service of process was ineffective because it was clearly not in substantial compliance with the requirements" of the operative federal rule governing service of process. Thus, although this Court recognized that service of process is "an important factor," absent "substantial compliance" with the federal service-of-process rule, notice alone is "not enough" to establish the court's jurisdiction over a person. *Id.* at 925 n.14.

The territorial limitation on service of process "other than a summons under Rule 4 or a subpoena under Rule 45," Fed. R. Civ. P. 4.1(a), is an indispensable part of Rule 4.1(a). Sullivan's receipt of the Order to Show Cause at his home in Hawaii, far beyond Florida's territorial limits, cannot possibly be deemed "substantial compliance" with this provision. Service of process was therefore legally invalid. For these reasons and those developed in Silverstein's Motion, the district court lacked personal jurisdiction to exercise authority over Sullivan, who was neither a party to the admiralty litigation nor an attorney appearing in the

21

matter.  This jurisdictional defect stands as a first-line reason why the Court should reject Motivation's appeal as to Sullivan.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DISMISSED MOTIVATION'S SANCTIONS CLAIM AGAINST SULLIVAN.

Motivation's motion for sanctions against Sullivan, a non-party to the underlying admiralty litigation, lacked a factual basis or any legal merit from its inception, a position which Sullivan repeatedly made clear to Motivation and the district court prior to the evidentiary hearing.  (Docs. 437, 457).  After giving Motivation the opportunity to make its case that sanctions were warranted, in an evidentiary hearing, the district court unsurprisingly found that Motivation offered "no evidence" in support of its assertions, given the testimony of two of *Motivation's* own witnesses that Sullivan was not involved in the litigation and the documentary evidence which largely showed that Sullivan was merely copied on the bulk of emails.

### A.     The Legal Framework Governing Inherent-Power Sanctions.

Courts may sanction attorneys and parties for their bad faith in matters before the court through the inherent power "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  Knowingly or recklessly raising a frivolous argument,

22

pursuing a meritorious claim to harass an opponent, delaying or disrupting litigation, or hampering the enforcement of a court order are each an independent basis for a finding of bad faith. *See id.* at 1214.[10] Absent a finding of bad faith, a court is powerless to impose sanctions under its inherent powers. *See id.* (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). "Because of their very potency," however, a federal court's "inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44.

As Sullivan was not a party to JTR's admiralty litigation, nor a lawyer who appeared before the court, both Motivation and the district court acknowledged that any restrained application of the court's inherent power to him would require "additional due process safeguards." (Doc. 528 at 4; Doc. 407 at 18). Specifically, as the district court explained, before a federal court invokes its

---

[10] Motivation makes passing reference to "willful blindness" in its summary of the argument regarding Issue D (M.Br. at 39), but does not develop the argument at all in the argument section of its brief directed at Sullivan. (*See id.* at 55-56). An issue treated in that cursory fashion is abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014). Even if willful blindness were applicable in the inherent powers context, knowledge is only "imputed to a party who knows of a high probability of illegal conduct and *purposely contrives to avoid learning of it.*" *Williams v. Obstfeld*, 314 F.3d 1270, 1278 (11th Cir. 2002) (emphasis added). *But see* T. Day 1 at 76, 80, 103, 127, 128; T. Day 2 at 271-72.

Motivation also suggests that mere negligence could be enough (M.Br. at 56 (asserting that "Sullivan . . . should have known the case was fraudulent")). But that plainly fails to rise to the knowing or reckless level of scienter required. *Barnes*, 158 F.3d at 1214; *In re Mroz*, 65 F.3d at 1576 (negligence and lack of diligence are not the same as bad faith).

23

inherent authority to sanction a non-party who was not subject to any court order, the "non-party 'must (1) have a substantial interest in the outcome of the litigation and (2) have substantially participated in the proceedings[.]'" (Doc. 528 at 4, quoting Doc. 445, ¶ 58 (order), in turn quoting *Helmac Prods. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993)). Motivation agreed that this standard applied to its motion. (Doc. 407 at 18; Doc. 440 at 8-9; Doc. 528 at 4 n.3).[11] Pursuant to this standard, "an individual who has only a minor degree of involvement with the litigation and who acts outside the presence of the court" should not be sanctioned. *Helmac Prods.*, 150 F.R.D. at 568.

This standard jives with that employed in this Court's intervening decision in *Sciarretta v. Lincoln National Life Insurance Co.*, 778 F.3d 1205 (11th Cir. 2015). In that case, the Court affirmed a district court's imposition of sanctions against a non-party, Imperial, which had engaged in bad-faith conduct in, among other things, failing to prepare a corporate representative it produced for deposition in response to a subpoena. *See id.* at 1213; *see also Sciarretta v. Lincoln Nat'l Life Ins. Co.*, No. 9:11-cv-80427-DMM, 2013 WL 11317858, *3-4 (S.D. Fla. May 6, 2013). The district court in that case took care to note that its exercise of its inherent authority was made with due restraint "because it is undisputed that

---

[11] Therefore, it could not advocate a different standard on appeal. *See E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

Imperial had a substantial interest and was substantially involved in the instant litigation." *Sciarretta*, 2013 WL 11317858 at *5 n.18 (citing, *inter alia*, *Helmac Prods.*, 150 F.R.D. at 567-68).

Although this Court did not specifically advert to these "*Helmac*" factors, its opinion makes plain that they were satisfied. Imperial, the sanctioned non-party, had a substantial interest in the litigation because it "financed the purchase of the [life insurance] policy . . . [being sued upon by the beneficiary]." *Sciarretta*, 778 F.3d at 1210. As a result of the outcome of the litigation, Imperial was able "to recover on its loans," *id.* at 1214, to the tune of $2.24 million in principal, interest and fees, *id.* at 1211. In addition, there was no question that Imperial was substantially involved in the litigation. Not only did Imperial engage in bad faith conduct when it selectively prepared its corporate representative for both his deposition and trial testimony, *id.* at 1210-11, 1213, something this Court deemed "enough" to satisfy the nexus with the litigation that due process requires for an imposition of sanctions, *id.* at 1214, but Imperial also was "the driving force behind the litigation and was at the heart of the conspiracy that the jury found," *id.* (quotation marks omitted).

In summary, in order for inherent-powers sanctions to issue against Sullivan, Motivation had to establish not only that Sullivan (1) engaged in bad-faith conduct, but also that he (2) substantially participated in the proceedings and (3) had a

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

substantial interest in the outcome of the litigation.  Particularly in view of the caution with which inherent powers should be invoked, *Chambers*, 501 U.S. at 50, Motivation had to prove its factual allegations by clear and convincing evidence. *See In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014); *Barash v. Kates,* 585 F. Supp. 2d 1347, 1365 (S.D. Fla. 2006) (collecting cases).

Motivation failed to carry its burden of proving that Sullivan engaged in bad-faith conduct and substantially participated in, and had a substantial interest in, the litigation.  As a result, the district court was able to dispatch Motivation's sanctions claim against Sullivan for failure to satisfy the substantial participation and interest prongs of the standard.  Its factual findings also implicitly concluded that Sullivan did not engage in bad-faith conduct.[12]

### B.   Motivation Failed to Show That Sullivan Acted in Bad Faith.

The district court's findings of fact after the pertinent trial (Sanctions II) demonstrate that Sullivan did not act in bad faith.  The district court found that the only witnesses Motivation called who even mentioned Sullivan vindicated him and that the documentary evidence Motivation introduced failed to implicate him in

---

[12] Given the district court's rejection of Motivation's claim on the substantial-participation and interest prongs, it did not need to make specific factual findings as to the lack of bad faith.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Miscovich's fraud. Specifically, the district court emphasized that both attorneys David Horan and John Siracusa

> testified that Paul Sullivan, their opinion, *had nothing to do with the fraud committed on the Court*, that he did not control the litigation or direct the filing of any pleadings in this case, *that he labored only to seek the truth concerning the origin of the emeralds*, and that upon learning of the testimony of the Jupiter jeweler, Mr. Rodriguez, he was one of those that insisted that these facts be brought to the Court's attention as soon as possible.

(Doc. 528 at 3) (emphasis added). That testimony is utterly inconsistent with Motivation's (spurious) allegation bad faith. And nothing in the emails Motivation introduced showed otherwise. They overwhelmingly showed Sullivan as a passive recipient, copied on the emails between JTR's lawyers, "along with . . . many others from whom" – the district court insightfully observed – "no sanctions have been sought[.]" (*Id.*).[13]

Motivation's brief casts sweeping aspersions on Sullivan's motives on appeal but fails to demonstrate that the district court's findings of fact regarding Sullivan's conduct were clearly erroneous. The few pieces of evidence Motivation addresses in its brief fall far short of that high hurdle.

The manner in which Motivation briefed its arguments regarding Sullivan presents some difficulty in organizing a response. Motivation's actual argument

---

[13] As explained in Sullivan's cross-appeal, *infra* pp. 59-60, Motivation's undeniable motive for targeting Sullivan with a sanctions motion was his "deep pockets."

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

directed toward Sullivan consists of a single short paragraph in "Issue D." (M.Br. at 55-56). There is a second paragraph addressing Sullivan in the summary of the argument section regarding Issue D. (*Id.* at 39). That's it. Both arguments are filled with conclusory assertions, such as "[t]here was actually copious evidence in the record of . . . Sullivan's substantial involvement and knowledge of and/or willful blindness to the fraud" (*id.*), yet both paragraphs are devoid of even a single record citation to that supposedly "copious" evidence. The argument does make sufficiently specific reference to three items of evidence that it is possible, by cross-reference to Motivation's statement of facts, to piece together what record items Motivation is relying upon. Beyond those three items – which we address below – one would be forced to intuit how Motivation might have marshaled a few additional pieces of evidence that it scattered across thirty pages of its statement of facts but fails to tether to its argument.

Motivation's failure to reference within the body of its argument the specific evidence it purports to rely upon, and its scattering of unconnected bits and pieces of evidence throughout its statement of facts, violate this Court's rules. Federal Rule of Appellate Procedure 28(a)(9)(A) "requires the argument section of an appellant's brief to contain 'the appellant's contentions and the reasons for them, with citations to the authorities *and parts of the record on which the appellant relies.*'" *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.4 (11th Cir. 2003)

(Court's emphasis). "Failure to comply with [that rule] may result in waiver or abandonment of issues on appeal." *Id.*[14] The Court should find that Motivation has abandoned any argument based on facts that it has failed to cite in support of its arguments.

Because much of the evidence Motivation sought to use to infer bad faith on Sullivan's part involved the extent to which he participated (or *not*) in the litigation, we address that evidence in the next section devoted to that prong of the analysis. That discussion shows that Motivation failed to prove that Sullivan acted in bad faith.

Notably, even though the district court did not reach the *legal* issue of bad faith (since it was able to pretermit the proceeding against Sullivan on other grounds), the findings of fact it made above would certainly support the conclusion that Sullivan did not act in bad faith. Consequently, the district court's order may be affirmed on that ground as well.

C.     **The District Court Did Not Abuse Its Discretion in Finding That Motivation Failed to Prove That Sullivan Substantially Participated in the Litigation.**

---

[14] *Accord Nat'l Alliance for the Mentally Ill, St. John Inc. v. Bd. of Cty. Comms. of St. John's Cty.*, 376 F.3d 1292, 1295-96 (11th Cir. 2004) (waiver due to appellants' "fail[ure] to provide any details" in support of argument); *U.S. v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (deeming argument abandoned when evidence supporting it was scattered across different parts of appellant's brief); *see also Sapuppo*, 739 F.3d at 681-82 (collecting abandonment cases).

**Podhurst Orseck, P.A**.

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

The district court did not abuse its discretion in concluding that Motivation came up short in its attempt to prove that Sullivan "direct[ed]" or "control[led]" the litigation (Doc. 528 at 3). Motivation omits mention of the central testimony from its two witnesses with knowledge of the subject, Horan and Siracusa, who unequivocally rejected Motivation's theory regarding Sullivan.

Horan, JTR's original admiralty counsel, testified that Sullivan "never directed me or ordered me to do something." (T. Day 1 at 130). Horan explained that Sullivan, at most, "supported *my* filing certain pleadings" and assisted Horan in searching for the truth. (*Id.* at 130) (emphasis added). Siracusa, JTR's successor admiralty counsel, also confirmed that Sullivan did not direct, control, or supervise the litigation, nor direct or inhibit Siracusa's filing of any court papers. (T. Day 2 at 270-71). Sullivan only "gave his thoughts and suggestions to Jay [Miscovich] on certain items[.]" (*Id*. at 271). Based on this testimony from Horan and Siracusa, the district court properly assessed that "[b]oth witnesses testified that Paul Sullivan, in their opinion, had nothing to do with the fraud on the Court" and "that he did not control the litigation or direct the filing of any pleadings in this case[.]" (Doc. 528 at 3).

The documents and snippets of testimony that Motivation relies on do not demonstrate otherwise. Rather, it is consistent with Horan and Siracusa's testimony that Sullivan supported their efforts to get to the truth and, at most,

30

offered suggestions but never interfered with the attorneys' handling of the litigation.

In support of its wholly conclusory and undeveloped argument that "substantial evidence showed that as a member of JTR's Advisory Board, Sullivan was actively involved in the management of the fraudulent litigation and was aware of and continued to advance the fraud even after Miscovich's suicide and even after Rodriguez described Miscovich's emerald purchases" (M.Br. at 55), Motivation enlists at most four specific items of evidence in the argument section of its brief. Those are: (1) Sullivan's testimony during the sanctions trial against JTR (Sanctions I), (2) his "hundred hours of phone calls with Horan," (3) "Horan's August 30, 2012 email," and (4) the fact that he was a member of the JTR Advisory Committee. (M.Br. at 39, 55-56). None these four items, however, even if they could be properly augmented by the free-floating bits of evidence Motivation improperly references only in the facts section of its brief, suffice to demonstrate that the district court abused its discretion in finding that Motivation failed to meet its burden of showing that Sullivan exercised any "direction or control over the litigation" (Doc. 528 at 3).

Before discussing the evidence Motivation cites, a prefatory word about the standard of review is in order. Motivation erroneously argues that a *de novo* standard applies to its argument (M.Br. at 36) because the district court's order

31

"wasn't based on credibility determinations, which are entitled to deference" (*id.* at

55).  Motivation is mistaken on both counts.  A court's decision whether to impose

sanctions pursuant to its inherent authority is reviewed for an abuse of discretion.

*Sciarretta*, 778 F.3d at 1212.[15]  The district court's conclusion that Motivation

failed to introduce evidence showing that Sullivan directed or controlled the

litigation was based, at least implicitly, on the court's crediting of the testimony of

Horan and Siracusa.   *See* Doc. 528 at 3 (order summarizing their favorable

testimony).   Such factual findings are subject to clear-error review, which is

"highly deferential."  *Renteria-Marin*, 537 F.3d at 1324.[16]

> ### 1. Reliance on Sullivan's testimony in the Sanctions I trial cannot, and does not, support Motivation's argument.

Motivation first cites as support that "Sullivan testified at the second trial

[Sanctions I] in defense of JTR after learning these details" (*id*. at 55-56).

Motivation fails to develop this argument at all, but its apparent thrust is to

insinuate that because Sullivan supposedly knew that Miscovich had lied about the

emeralds, the fact that Sullivan testified on behalf of JTR at the sanctions trial

---

[15] The case Motivation cites for *de novo* review involved dissimilar circumstances and an entirely irrelevant procedural rule.  *See Matthews v. Gaither*, 902 F.2d 877, 879  (11th Cir. 1990) (applying *de novo* review to a *plaintiff's voluntary* dismissal of his own complaint under Fed. R. Civ. P. 41(a)(1)).

[16] Motivation's citation to *United States v. Gregg*, 179 F.3d 1312, 1316 (11th Cir. 1999), confirms that "great deference" must be accorded to the district court's credibility findings.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

against JTR (since Miscovich was dead by then) itself constitutes evidence that he furthered the fraud. Putting aside Motivation's unfair characterization of Sullivan's testimony at the Sanctions I trial, the trouble with this contention at all is that it relies entirely on evidence *outside* the relevant record – that is, the proceeding against Sullivan (Sanctions II).

### a. Sullivan's testimony from the Sanctions I trial is not part of the record of the Sanctions II trial.

The question of whether the evidence from the Sanctions I trial, including affidavits and deposition testimony related to it, could be considered a part of the record for purposes of Sanctions II was the subject of much debate below, and after extensive discussion, the district court expressly *excluded* it from the record over Motivation's objection that it should be a part of the record. (T. Day 5 at 29). The lengthy procedural history leading to that ruling is set forth in the margin.[17] The

---

[17] After Motivation rested its case (T. Day 2 at 344), the parties and the court engaged in lengthy discussions about the contents of the record pertinent to the Sanctions II trial. (T. Day 2 at 369-71; T. Day 4 at 85-101; T. Day 5 at 3-38). Motivation requested that the record from the Miscovich/JTR (Sanctions I) trial be made part of the record for the Sanctions II trial. (T. Day 4 at 90, 100; T. Day 5 at 27; *see also* Doc. 524). On November 25, 2014, the Court finally ruled on the issue. It clearly identified what evidence was in the record of the Sanctions II trial as of that date. (T. Day 5 at 26:15-23; Doc. 542 at 3 (showing Court's exhibit as of that date)). On the subject of whether or not the *prior* testimony of witnesses, including Sullivan, whom Motivation had listed for the Sanctions II trial, admittedly "could have called" (T. Day 5 at 27), but made the "strategic decision not to call" (*id.* at 18), the district court unambiguously declared: "it is the ruling of the Court that they are not part of this record. They may not be referred to as to their testimony given before Judge Moore in his January 2014 hearing [i.e.,

33

district court's clear evidentiary ruling precludes any consideration of the fact that Sullivan testified during the Miscovich/JTR trial (Sanctions I), the substance of his testimony, or any inferences that could be drawn from his having testified.

Not only did Motivation fail to disclose the adverse evidentiary ruling excluding reference to this evidence in its brief, but Motivation did not raise the district court's ruling as an issue on appeal. That "fail[ure] to challenge in their opening brief the district court's ruling" means that Motivation "abandoned" the issue. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012). Motivation's reliance on that evidence here must be disregarded.

### b. Motivation mischaracterizes Sullivan's prior testimony.

Lest this Court's impression be colored by Motivation's improper insinuation of bad faith conduct on the part of Sullivan based on inferences from evidence outside the record, it is worth noting that Motivation's spin is belied by the record. Motivation argues that Sullivan advanced the fraud by testifying after learning that Miscovich had purchased a large quantities of uncut emeralds from the jeweler, Rodriguez. But Siracusa's testimony – at the Sanctions II trial –

---

Sanctions I]" (*id*. at 29). Subsequent to that ruling, Motivation moved to add to the record certain affidavits of Silverstein (*id*. at 31-32), which the Court admitted over objection (*id*. at 32, 34-38).

34

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

undercuts that unfair line of attack. Siracuasa testified that Sullivan *insisted* that Rodriguez testify even though Sullivan had learned that Rodriguez would likely testify unfavorably to JTR. Siracusa explained:

> It was almost an instantaneous decision between [Sullivan], myself, and the rest of us that were at the table that we needed to --- we needed to have this man come down. Regardless of what he was going to testify to, he needed to come tell the judge what happened.

(T. Day 2 at 271). Siracusa added that Sullivan made a toast later that evening along the lines of "no matter how much this is going to hurt in the next few days, you are going to look back on this for the rest of your lives and you are going to be glad that you did the right thing, so it was a gift." (*Id*. at 272). The district court credited this testimony in dismissing Motivation's sanctions claim against Sullivan. (Doc. 528 at 3). In other words, far from trying to conceal any fraud from the district court, Sullivan urged that the truth come out regardless of the consequences to JTR.

### 2. Sullivan's conversations with Horan do not prove that Sullivan knew about or furthered the fraud.

The second piece of evidence Motivation cites in support of its claim that Sullivan was substantially involved in the litigation and should have known of Miscovich's fraud concerns the testimony that Sullivan spent "at least 100 hours in telephone conversations with [Horan] about the case, including speculation about where Miscovich was buying emeralds." (M.Br. at 39, 56.) Although Motivation

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

again neglects to substantiate this argument with record citations, in violation of Rule 28(a)(8)(A), it appears to be referencing the excerpts from Horan's testimony that it cites in its statement of facts. (*Compare* M.Br. at 20).

This testimony in no way discredits the district court's finding that Motivation presented "no evidence" of Sullivan's substantial participation in the admiralty litigation. Both Horan and Siracusa specifically testified that Sullivan did not direct or control the litigation and only sought the truth about the origins of the emeralds. (T. Day 1 at 130; T. Day 2 at 270-271).

Motivation also mischaracterizes Horan's testimony regarding the purpose of the "hundred hours of conversations" he had with Sullivan. (T. Day 1 at 76). Horan was referring specifically to conversations in which he and Sullivan were trying to uncover the *truth* about the emeralds' provenance:

> [H]e and I had many conversations with regard to how are we going to find out and unravel the mystery of where these emeralds came from. *And he was very, very much in assistance with me to get to the bottom of that.* And we had, I would say conservatively, a hundred hours of conversations. It sounds like a lot, but it was a lot of *conversations with regard to trying to get to the bottom of it.*

(*Id.*) (emphasis added). This testimony does not support the nefarious spin Motivation urges the Court to place on the fact that Sullivan had a hundred hours of telephone conversations with Horan.

Far from evidencing some bad-faith intent to perpetrate a fraud on the court, those communications demonstrate Sullivan's good intentions. As Horan put it,

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Sullivan "was the one that I could rely on to support my decision with regard to my obligation to the court." (*Id*. at 127). After Motivation filed its claim to the treasure, Sullivan "was in favor" of Horan's suggestion to have a Key West expert inspect the emeralds to determine whether they came from the *Atocha* or *Margarita* wrecks. (*Id*. at 80). Sullivan never gave Horan "any resistance to turning over some of the gems to Motivation[.]" (*Id*. at 127). "As a matter of fact," Horan emphasized, Sullivan "*supported* turning them over." (*Id*.) (emphasis added). Later when lab analyses of samples of the emeralds revealed the perplexing result that some had a modern epoxy on them, Horan discussed with Sullivan his desire "to get a second status report filed that informed the court as to what had been discovered by the Swiss and French labs." (*Id*. at 103). "Sullivan agreed with [Horan] that we should go ahead and immediately inform the court as to what the discovery was." (*Id*.). Sullivan never offered "any resistance to disclosing the [damning] test results to the Court[.] (*Id*. at 128). *See also* Ex. M1-4 (M. App'x No. 23) at Bates p. 000019 (item c.) ("With Sully's help, I was allowed to file [the status report]"). Horan and Sullivan also investigated alternative theories for the presence of the modern epoxy on the emeralds (*id*. at 107, 127-28), work that simply furthered the effort to figure out what was then the mystery of Miscovich's treasure find.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Horan's testimony at most shows that any involvement Sullivan had in the admiralty litigation was "minor," short of the mark of the "substantial" participation required for an exercise of inherent-power sanctions against a non-party. *Helmac Prods. Corp.*, 150 F.R.D. at 568. The testimony at the Sanctions II trial revealed only that Sullivan's actions were motivated by his commendable desire to unravel the mystery of the emeralds and to inform the district court of the truth. There is no evidence of bad faith conduct on his part.

### 3. Horan's August 30, 2012 email does not support Motivation's argument.

The third piece of evidence Motivation references in its argument – "Horan's August 30, 2012 email" – is similarly bereft of citation to the record (M.Br. at 56), but it can be readily correlated to a particular exhibit Motivation cites in its statement of facts. (*Compare* M.Br. at 20-21) (citing Ex. M1-4). That email, however, likewise fails to supply a basis for finding that Sullivan substantially participated in the litigation or engaged in bad-faith conduct.

In his August 30, 2012 email to Sullivan, Horan confided in Sullivan that he felt compelled to withdraw based upon "the accumulation of numerous surprises along the way" which caused Horan to doubt Miscovich's veracity. Ex. M1-4. These are some of the points Motivation identifies as "red flags" about Miscovich's claim to have discovered sunken treasure. (M.Br. at 10). This email was sent several months before the original admiralty trial in December 2012. The

38

fact that Horan felt comfortable confiding first in Sullivan speaks volumes. (Ex. M1-4 at Bates pp. 000016) ("This is being sent to you – After you and I talk I will send it to everybody else."). Horan knew Sullivan would support his doing the right thing. (*Id*. at Bates pp. 000017) ("I will need your help facilitating my withdrawal.").

But just because Sullivan learned that Horan had become convinced, with the benefit of "hindsight" (*id*. at Bates p. 000020), that Miscovich's story was so unreliable that he felt compelled to withdraw as JTR's counsel does not mean that Sullivan automatically *knew* that Miscovich's's claim was a fraud. As Siracusa testified, Miscovich's fraud was not laid bare until January 2014 when the jeweler – who had previously lied to Siracusa's paralegal by not telling her about the large volume of uncut emeralds he sold to Miscovich (T. Day 2 at 262) – dropped this bombshell in his testimony during the JTR/Miscovich (Sanctions I) trial (*id.* at 263-64).

Additionally, Motivation fails to link whatever Sullivan learned from the August 30, 2012 email from Horan to any improper *action* Sullivan took, or even allegedly told anyone else to take, in the litigation. That nexus is entirely absent, both from the argument in Motivation's brief, and from the evidence in the record. Nor has Motivation even advanced the far-fetched theory that *if* Sullivan knew at that point that the JTR litigation was advancing Miscovich's fraud, it could be a

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

valid exercise of the court's inherent powers to sanction a non-party and non-lawyer for his *omission* to cause the voluntary withdrawal of the case which he was backing.  That dubious question is not presented by this case.

### 4.     Sullivan's status as a member of JTR's Advisory Board does not prove he participated in the litigation.

Although Motivation does not reference the evidence showing that Sullivan was on the Advisory Board to JTR, that fact is uncontested and did come in evidence during the Sanctions II trial.  (*Id.* at 218).  Motivation seems to suggest that this Court should *presume* Sullivan's active involvement in the litigation based solely on his status as a member of JTR's Advisory Board.   There was no evidence, however, that there was something inherent in that role – some power, or right of review of litigation decisions – let alone that Sullivan exercised it.[18] Motivation makes zero effort to explain how that evidentiary gap can be crossed, seemingly content to urge the Court to make a blind leap.  This weak argument should be rejected both because Motivation failed to develop it, *see Sapuppo*, 739 F.3d at 682, and because it fails to indicate any abuse of discretion.

In summary, the four pieces of evidence discussed above – the only ones Motivation references (if only obliquely) in the argument section of its brief – fail to demonstrate that the district court abused its discretion in rejecting Motivation's

---

[18] Motivation offers the bald assertion, in the facts section of its brief, that "[a]s a member of JTR's Advisory Board, key litigation actions were subject to Sullivan's approval."  (M.Br. at 21 n.3).  It cites no authority for this assertion.

40

motion for inherent-power sanctions against Sullivan. This evidence did not conflict with the more precise, favorable live testimony of the witnesses Motivation itself called at trial, which the district court reasonably credited. Motivation has offered no valid basis for reversal.

**5.** **Even if the evidence Motivation references only in the facts section of its brief were considered, it would not alter the result.**

Motivation also drops isolated reference to a number of other trial exhibits in a footnote in the facts section of its brief, where it seems to articulate some additional argument. (*See* M.Br. at 21 n.3). The *argument* section of the brief, however, does nothing to argue – or even allude to – the supposed significance of this additional evidence. Under this Court's longstanding precedent, whatever arguments Motivation intended to make based on this evidence but failed to articulate should be deemed abandoned. *Sapuppo*, 739 F.3d at 681-82; *Ledford v. Peeples*, 605 F.3d 871, 913-14 (11th Cir. 2010) ("A mere recitation of the underlying facts . . . is insufficient to preserve an argument").

In the event this Court permits this free-floating evidence to be considered, it still would not demonstrate an abuse of discretion in the district court's finding that Sullivan did not exercise substantial control and direction over the JTR admiralty litigation. In an abundance of caution, we address over the next several pages

41

below each piece of evidence Motivation cites in footnote 3 of the facts section of its brief.

Before doing so, however, we note that Motivation also salts another two handfuls of references to Sullivan throughout the facts section of its brief, all seemingly untethered to an actual argument made on appeal. (*See* M.Br. at 5, 6, 10, 12, 14, 18-19, 22, 29, 32, 35). Sullivan should not have to, and shall not, assume Motivation's burden of formulating arguments regarding this evidence and then responding to those imagined assertions. *Cf. Jernigan*, 341 F.3d at 1283 n.8 (appellant must put appellee on notice of the issues being raised; Court's job is "not to hunt for issues that an appellant may or may not have intended to raise").

Moreover, a number of those scattered references to Sullivan rely on evidence that was not introduced at the Sanctions II trial until *after* the district court had already granted Sullivan's motion for involuntary dismissal, which happened on December 2, 2014, during the interlude between Days 5 and 6 of the trial.[19] Such evidence is, therefore, beyond the applicable record for Motivation's appeal. *See Weissinger*, 423 F.2d at 798 ("evidence not admitted at the time

---

[19] *See* M.Br. at 12 (citing Day 10 testimony), 14 (citing Day 6 testimony), 19 (citing Day 10 testimony); 22 (citing Day 8 testimony); 29 (citing Exhibits M2-30 and M20, both introduced on Day 10 (December 10, 2014); *compare* Doc. 542 (trial exhibit list) at 5.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          |          www.podhurst.com

defendant's motion [for involuntary dismissal] was sustained" is not applicable upon review of the order).  It is doubly improper to consider here.

a.  *Additional email strings*.  In footnote 3 of the facts section of its brief, Motivation cites three email strings as support for its contention (in that footnote) that Sullivan was involved in the litigation.  These emails largely bear out the district court's finding that the email evidence introduced at trial "shows only that Paul Sullivan's email address was copied—along with those of many others from whom no sanctions have been sought—on communications between JTR's counsel and others."  (Doc. 528 at 3).  Motivation grossly overstates the evidence when it asserts that "JTR's general outside counsel' advised counsel of record [Horan] repeatedly that key decisions in the litigation had to be approved by Sullivan." (M.Br. at 21 n.3).  Motivation cites two exhibits for this point, only one of which (Ex. M1-19) was part of the applicable record.[20]  In that email string, Silverstein informs Horan:

> going forward, you will send me copies of all other filings that are made . . . none of which will be made on behalf of JTR unless and until Jay, Scott, Steve, Paul and I have had a reasonable *opportunity to* review, comment and consent to such filings . . . *all subject to your ultimate responsibility as an officer of the Court.*

---

[20]  The other email (Ex. M1-14) was not introduced until December 8, 2014 (*see* Doc. 542 at 4), a week after the district court issued the order dismissing the sanctions claims against Sullivan.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

(Ex. M1-19 (M. App'x No. 30) at Bates p. 000117 (¶ 3)) (emphasis added). Silverstein's instruction does not fairly give rise to the interpretation Motivation argues. And even if it did, there was no evidence that Sullivan, a non-lawyer, agreed to take on this responsibility, or that he ever exercised it. To the contrary, the testimony of lawyers Horan and Siracusa undercut Motivation's theory that Sullivan was substantially involved in the conduct of the litigation. (*See* T. Day 1 at 130; T. Day 2 at 270-271).

Next, the other two email strings Motivation cites, Exhibits M1-33 and M2-9, fail to establish that Sullivan decided "whether and when to make important disclosures to the Court." (M.Br. at 21 n.3). In Exhibit M1-33 (M. App'x No. 39), Sullivan merely observed to a group of eleven others that since JTR had already filed the lab reports regarding the emeralds with the court, he agreed with others that there was no need also to file an appraisal. This email does not prove that Sullivan wielded any decision-making authority, just that he weighed-in on a group discussion regarding strategy.[21]

The email string comprising Exhibit M2-9 (M. App'x No. 41) stretches across eight pages, and Motivation's fails to pinpoint any particular statement within it to support its contention above. The only emails Sullivan sent concern

---

[21] Indeed, Motivation and its counsel's egregious misrepresentation of the contents of this email to the court forms part of Sullivan's motion for sanctions discussed in the cross-appeal. (*See* p. 59, *infra*.)

44

**Podhurst Orseck, P.A**.

25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

the collateral issue of his involvement in tracking samples of the emeralds that had been shipped to various labs for testing. (*See* Ex. M2-9 at Bates pp. 000076, 78). The others emails are between the lawyers, Horan and Silverstein, concerned with when a Third Status Report should be filed with the court. Sullivan is merely copied, along with many others, on those emails. To be sure, Silverstein wrote that he "underst[ood] from Paul, Scott and Jay that JTR has not authorized the filing of a Third Status Report at this time" (*id.* at Bates p. 000072), but that statement is weak evidence of Sullivan's actual role, if any. Indeed, it only speaks of the collective JTR decision.

b.     *Horan's testimony.* Motivation cites Horan's testimony (T. Day 1 at 80, 103) as support for the contention that Sullivan "was involved in key litigation decisions." (M.Br. at 21 n.3). While the testimony shows that counsel of record, Horan, consulted with Sullivan about certain litigation decisions, it does not show that Sullivan influenced any, and certainly not in a corrupt manner that would even hint at bad-faith conduct. In fact, the substance of Horan's testimony fully substantiates the district court's finding that Sullivan "had nothing to do with the fraud committed on the Court" and "that he labored only to seek the truth concerning the origin of the emeralds." (Doc. 528 at 3). In the cited pages of testimony, Horan explained that Sullivan *supported* Horan's efforts to permit Motivation's expert to examine the emeralds to determine if they belonged to the

45

shipwrecks to which Motivation had title (T. Day 1 at 80), as well as Horan's push to "immediately inform the court" about the Swiss and French labs discovery of epoxy on the emeralds (*id.* at 103). (*See also id.* at 127-28).

      *c.*   *The Silverstein Affidavit.*  Motivation also cites several paragraphs from the extremely lengthy Silverstein Affidavit of August 28, 2014 to support its contention that Sullivan was involved in key litigation decisions. (M.Br. at 21 n.3) (citing Ex. M8 (M. App'x No. 61)).[22] This affidavit, which incorporates other witnesses' trial and deposition testimony, is improper to rely upon against Sullivan. The district court repeatedly expressed concern about Motivation's reliance upon this and two other Silverstein affidavits (T. Day 3 at 503-04; T. Day 4 at 14, 95), and when Motivation belatedly moved for their introduction in evidence, the court ruled that it would be admitted only for purposes of Motivation's claim *against Silverstein* (T. Day 5 at 35-36).

      Several of the paragraphs of the Silverstein affidavit that Motivation cites contain summaries and excerpts of Sullivan's statements in an affidavit (¶ 45), in testimony at the JTR/Miscovich (Sanctions I) trial (¶ 46), and at his deposition (¶ 47). Considering that the district court ruled that Sullivan's prior testimony could not be part of the record in the sanctions case against him (*see* n.17 *supra*), particularly because Motivation could have called Sullivan as a witness but chose

---

[22] The complete version of the affidavit may be found in the docket at Doc. 459-1.

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    |    www.podhurst.com

not to (T. Day 5 at 28-29), this after-the-fact, backdoor attempt to smuggle in that testimony and use it against him is improper. *See Weissinger*, 423 F.2d at 798.

Likewise, the remaining paragraphs of the Silverstein affidavit that Motivation cites add little. Most mention Sullivan's involvement in an activity of JTR separate from the litigation: dealings with CBS and the *60 Minutes* program. (Ex. M8, ¶¶ 60, 66, and 67). The other contains Silverstein's innocuous statement that Sullivan was among those supporting giving Motivation access to inspect the emeralds (*id*. ¶ 94), but also cross-referencing citations to a handful of other emails by Horan and Silverstein, which Motivation has not even relied upon itself.

In summary, even if the Court were to consider the record evidence cited in footnote 3 of Motivation's statement of facts, there is no basis to conclude that the district court abused its discretion in in finding that there was "no evidence" to support the conclusion that Sullivan substantially participated in the admiralty litigation. *See Renteria-Marin*, 537 F.3d at 1324.

> **D.  The District Court Did Not Abuse Its Discretion in Finding That Motivation Failed to Prove Sullivan's Substantial Interest in the Litigation.**

Motivation does not challenge the district court's conclusion that Motivation failed to present any evidence "as to Paul Sullivan's interest, financial or

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

otherwise, in the outcome of this case" (Doc. 528 at 3). Rather, Motivation only focuses on the substantial-participation prong.[23]

As a result, Motivation has abandoned any argument on this issue. *See Sapuppo*, 739 F.3d at 681 (failure to "devote even a small part of the[] opening brief to arguing the merits of the district court's alternative holdings" constitutes abandonment of the issue). If this Court agrees that a substantial interest in the litigation is a prerequisite to imposing sanctions upon a non-party pursuant to the court's inherent authority, then this abandoned issue presents an independent basis for affirmance.

## CONCLUSION

Motivation has failed to demonstrate that any of the district court's fact-finding was clearly erroneous or that the district court abused its discretion in refusing to exercise its inherent authority to impose sanctions on Sullivan. That ruling should be affirmed.

Sullivan was as much a victim of Miscovich's fraud as Motivation was, and it is to Motivation's frivolous effort to recoup its financial losses from an innocent man with "deep pockets" that we turn in the cross-appeal below.

---

[23] Motivation's stray reference to Sullivan's status as a member of JTR's Advisory Board cannot fairly be construed as argument challenging the district court's ruling on the substantial-interest prong because Motivation plainly used that fact only to argue that "as a member of JTR's Advisory Board, Sullivan was *actively involved in the management of the fraudulent litigation* and was *aware of and continued to advance the fraud*" (M.Br. at 55) (emphasis added).

48

*   *   *   *   *

## CROSS-APPEAL

## SUMMARY OF ARGUMENT

Having been unfairly targeted by Motivation and its counsel because of his wealth as a potential "deep pocket" from which they might recoup their losses, Sullivan then sought sanctions against them for prosecuting the frivolous allegations that he had participated in bad-faith conduct in the underlying admiralty litigation. At the time Motivation moved the district court to impose sanctions against Sullivan under the court's inherent powers, it was aware of sworn testimony from two earlier trials exonerating Sullivan from any bad faith conduct, as well as the heightened legal burden it faced in bringing such a claim against a non-party. It nonetheless forged ahead with its claim against Sullivan knowing or in reckless disregard of the reality that it could not legitimately satisfy its evidentiary burden. As internal emails among Motivation and its counsel later revealed, by this time they were engaged in a witch hunt of "caging of the deep pockets" to find people or entities to target for sanctions in order to recoup their losses. (Doc. 555, Ex. B). Notwithstanding the lack of any basis for the claim against Sullivan, Motivation and its counsel resorted to an unwholesome strategy to win at all costs, even by means of egregious misrepresentations of the evidence against Sullivan to the district court. Sullivan was forced to defend his good

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

reputation all the way through trial, which foreseeably resulted in an involuntary dismissal of Motivation's claim against him after it rested its case.

The district court, seemingly interested in putting to rest the epic sanctions saga spawned by Miscovich's fraud, dismissed Sullivan's motion on the papers in a short order that failed to address several key issues. Sullivan raises two discrete errors in the order, each of which amounts to an independent abuse of discretion. First, the district court incorrectly applied the law governing Sullivan's primary sanctions claim that Motivation brought a frivolous claim against him in the Sanctions II proceedings. The district court erred when it failed to consider whether evidence existed to support the essential element that *Motivation* knew, or was reckless in not acknowledging, that *it* could not have proven that Sullivan had acted in bad faith in the admiralty litigation. Second, as to the subsidiary theory of bad faith which Sullivan advanced in his motion, the district court summarily dismissed it against *Motivation*, but overlooked that it was also advanced against Eugene Lewis, *Motivation's counsel*. In other words, the district court's overly hasty dismissal of Sullivan's credible claims omitted key analytic points, requiring a remand so that the claims can be considered using a legally proper analysis.

## ARGUMENT

## I. THE DISTRICT COURT ABUSED ITS DISCRETION BY INCORRECTLY APPLYING THE LAW GOVERNING SULLIVAN'S SANCTIONS MOTION.

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

Sullivan's inherent powers sanctions claim against Motivation and its counsel raised two distinct theories of bad faith, and the district court abused its discretion, in different ways, in its resolution of each theory. In order to appreciate the district court's errors, it is necessary to compare the arguments Sullivan raised in his motion against the district court's analysis in its order.

### A.      Sullivan's Dual Theories of Bad-Faith.

Sullivan argued in his motion that Motivation and its counsel had acted in bad faith not simply because they knew or were reckless in not acknowledging that they lacked enough evidence to carry their burden of proving that Sullivan had engaged in bad-faith conduct, but also because of the *manner* in which they brought their sanctions claim. (Doc. 555). Specifically, the motion delineated three separate arguments under the heading of bad faith: (1) that Motivation and its counsel acted in bad faith by knowingly or recklessly seeking sanctions against Sullivan without basis in law or fact (*id*. at 7-8); (2) that Motivation and its counsel acted in bad faith by knowingly or recklessly *misrepresenting* to the court certain evidence about Sullivan in furtherance of Motivation's sanctions motion (*id*. at 8-10); and (3) that the emails in which Motivation and its counsel admitted targeting Sullivan because he was a "deep pocket" evidenced *subjective bad faith* in bringing the sanctions claim against him (*id.* at 11).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Sullivan's primary theory of bad faith (numbered (1) above) raised the question of whether Motivation – a party in the action – and its counsel acted in bad faith when they levelled their sanctions claim again Sullivan because they knew or were reckless in not acknowledging that such a claim was "frivolous," as the district court acknowledged (Doc. 588 at 4). The knowing or reckless prosecution of a frivolous argument warrants "[a] finding of bad faith." *Barnes*, 158 F.3d at 1214. A frivolous claim is one that is "groundless . . . with little prospect of success." *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (quotation marks omitted).

Sullivan's primary theory thus required the district court to analyze whether Motivation and its counsel knew, or were reckless in failing to acknowledge, that it was highly unlikely that Motivation would have been able to satisfy its burden of proof on its sanctions claim against Sullivan. As Motivation and its counsel understood, they had to prove by clear and convincing evidence that Sullivan had (1) engaged in bad-faith conduct, (2) substantially participated in the JTR admiralty litigation, and (3) a substantial interest in those proceedings. (*See* Doc. 407 at 18; Doc. 440 at 1, 8-9; Doc. 555 at 7). In other words, if Motivation and its counsel knew, or were reckless in failing to acknowledge, that they lacked proof of *any one* of those three mandatory elements to Motivation's sanctions claim against

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Sullivan, then the prosecution of that claim could, as a matter of law, have been frivolous and therefore brought in bad faith.[24]

Sullivan's subsidiary theory of bad faith proceeded in parallel, but independently of, this primary theory. It focused on the manner that Motivation – as well as its counsel – litigated Motivation's sanctions claim against Sullivan, by making bad-faith misrepresentations of fact to the court in their motion papers. Sullivan described this theory as "Motivation and its Counsel's pattern of deception and repeated misrepresentations to the Court in their quixotic efforts to get to Mr. Sullivan's 'deep pockets.'" (Doc. 566 at 2). A court may use its inherent authority to sanction both a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers*, 501 U.S. at 45 (quotation marks omitted), as well as its attorney, *In re Mroz*, 65 F.3d at 1575; *Barnes*, 158 F.3d at 1214-15. Sullivan's additional contention that Motivation and its counsel's statements in internal emails that Sullivan would make a good target for a second-round sanctions claim because he has "deep pockets" was evidence of their subjective bad-faith motivation relevant to both of Sullivan's theories.

**B.     The District Court Misapplied the Law in Dismissing Sullivan's Principal Theory of Motivation's and Its Counsel's Bad-Faith.**

---

[24] There is no question that Motivation and its counsel were well aware, at the time they filed the motion for sanctions against Sullivan, of this heightened legal burden that they were taking on. (*See* Doc. 407 at 18).

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Turning to the district court's analysis, it addressed Sullivan's principal theory in the paragraph on page four of its order. That theory, again, required an analysis of whether Motivation's sanctions claim had been brought in bad faith because it and its counsel knew or were reckless in not acknowledging that Motivation could not meet its burden of proof on the three elements required under that claim. The district court, however, let Motivation and its counsel off the hook based on its conclusion that they had a sufficient basis with respect to only *two* of those elements (substantial participation and substantial interest), without considering whether they had a sufficient basis for the essential element that Sullivan had acted in bad faith. (Doc. 588 at 4). The district court never addressed the element of bad-faith which, as Motivation and its counsel knew, was "'[t]he key to unlocking [the court's] inherent power'" (*id.* at 3) (quoting *Sciaretta*, 778 F.3d at 1212). Instead, the district court merely concluded its analysis by stating: "So, the statement in the instant motion that Motivation's claims had no 'basis in law or fact' is dubious at best" (*id.* at 5) (presumably quoting Doc. 555 at 1, 7). Against the background of Sullivan's arguments, it is quite clear that the district court intended this concluding sentence to wrap-up its analysis of Sullivan's contention based on "Motivation's claims ha[ving] no 'basis in law or fact'" (Doc. 588 at 5).

54

Thus, the district court disposed of Sullivan's sanctions claim based on an analysis of only two of three elements, all three of which Motivation and its counsel had to have satisfied in order to have been free from the bad-faith conduct of bringing a frivolous claim. It is quite clear that the district court limited its scrutiny of Sullivan's contention that "Motivation's claims had no 'basis in law or fact'" – encompassing all three elements of Motivation's claim – to only the two elements of Sullivan's substantial participation and interest. (*See* Doc. 558 at 4-5). It failed to evaluate the element of Sullivan's bad faith. A claim seeking a court to exercise its inherent sanctions power but which lacks evidence to support even just one of the three requirements would be "groundless . . . with [no, let alone] little prospect of success." *Gilbert*, 198 F.3d at 1299.

This analytic omission is particularly significant, considering that the bad-faith element was the most difficult for Motivation and its counsel to have proven and one as to which there was *never* any evidence. Keep in mind that at the time Motivation brought its sanctions claim, it already had access to volumes of evidence from the admiralty trial and the JTR/Miscovich sanctions trial (Sanctions I). It knew, therefore, that JTR's attorneys had already sworn that Sullivan had nothing to do with Miscovich's fraud. As Sullivan pointed out in his early motion to quash service of Motivation's motion for sanctions, "[b]efore the Court is the undisputed testimony of JTR's attorneys in this case, unequivocally stating the Mr.

Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Sullivan did not substantially participate in the litigation, let alone any bad faith conduct." (Doc. 457 at 7). Motivation and its counsel also knew, from Sullivan's testimony at the JTR/Miscovich sanctions trial (Sanctions I), that Sullivan had no basis to question the validity of the emeralds until after the conclusion of the December 2012 admiralty trial, since "the emeralds had been blessed by a New York law firm, a New York hedge fund, the Smithsonian, Sotheby's, and an independent appraiser[.]" (Doc. 457 at 15; *see also id.* at 14 (quoting Sullivan's testimony)). Notwithstanding their awareness of this information (and evidence), Motivation and its counsel willfully or recklessly chose to forge ahead with the sanctions claim against Sullivan, all the way through trial. Under these circumstances, had the district court undertaken the requisite analysis of the bad-faith element of Sullivan's primary claim, it cannot be gainsaid that such an analysis may have altered the outcome of the court's decision on Sullivan's motion.

In summary, the above analytic errors by the district court constitute abuses of its discretion that require a remand. Whether the district court misconceived the proper analytic framework or simply failed to apply it correctly, either legal error constitutes an abuse of discretion:

> [a]n abuse of discretion occurs when the district court applies an
> incorrect legal standard, applies the law in an unreasonable or
> incorrect manner, follows improper procedures in making a
> determination, or makes findings of fact that are clearly erroneous, or

56

when it misconstrues its proper role, [or] ignores or misunderstands
the relevant evidence.

*Sciaretta*, 778 F.3d at 1212 (internal citations and quotation marks omitted).  In fairness to the district court, the analytic issues presented by Sullivan's motion certainly have the potential to confuse, since they involve a non-party's motion for inherent-power sanctions against a party and its counsel for their willingness to prosecute their own frivolous motion for inherent-power sanctions against him. Keeping the seemingly overlapping elements separate in the analysis is challenging.  Still, it strongly appears that the district court's order incorrectly applies the proper legal analysis to Sullivan's primary theory by dismissing the sanctions claim against Motivation without addressing a vital element.  A reversal and remand is warranted for the district court to undertake the correct analysis.

### C. The District Court Overlooked Sullivan's Subsidiary Theory of Bad-Faith Directed at Motivation's Counsel.

Turning to the district court's treatment of Sullivan's subsidiary theory of bad faith, directed at both Motivation and its counsel based on the manner in which they litigated the sanctions claim against Sullivan, the district court directed its conclusory analysis only at Motivation, not its counsel.  Having concluded its analysis on Sullivan's primary theory, the district court then addressed the subsidiary theory in a succinct, new paragraph.  It stated simply:  "Mr. Sullivan has not shown, by clear and convincing evidence or otherwise, that Motivation's

pursuit of sanctions against him was in bad faith." (Doc. 588 at 5).[25] This perfunctory conclusion fails to address the aspect of the theory directed to Motivation's counsel. Sullivan's motion clearly delineated that his subsidiary theory was directed at both "Motivation and Counsel." (Doc. 555 at 8).

Again, the district court's omission is particularly troubling given the strong and pointed showing Sullivan made of litigation misconduct by Motivation's counsel. Not only in his motion for sanctions and reply in support (Docs. 555, 566), but also in his earlier responses defending against Motivation's motion for sanctions (Docs. 437, 457), Sullivan identified numerous instances of Motivation's and its counsel's reckless and vexatious conduct and blatant misrepresentations to the court. For instance, counsel penned a reply in support of Motivation's motion for sanctions in which they accused Sullivan of having "made multiple edits which kept Horan from filing" the Third Status Report with the Court, without citation to any evidence. (Doc. 440 at 7). Sullivan established in his motion to quash Motivation's sanctions motion that he had no role in drafting the Third Status Report. (Doc. 457 at 8). Indeed, Horan's March 31, 2014 declaration, to which

---

[25] This statement cannot reasonably be read to be addressing the missing third element on the primary theory, since the district court took pains in its analysis of the elements of that theory which it did address to point to evidence supporting those elements. (Doc. 588 at 4 & n.4). With respect to the element of bad faith, however, it did not similarly point out any evidence that would have justified Motivation to have believed that Sullivan had acted in bad faith. Moreover, if we are mistaken in our reading of this order, then the district court failed entirely to address Sullivan's subsidiary theory, which was based on litigation misconduct.

58

Motivation's counsel had access prior to filing the offending reply memorandum on April 7, 2014, directly contradicted their false accusation. (Doc. 437, Ex. E. ¶¶ 4-7). When confronted with this evidence, Motivation through counsel insisted the inaccurate allegation was not fabricated, just "poorly worded." (Doc. 481 at 4).

Likewise, Motivation's counsel's court filings repeatedly misrepresented that Sullivan prevented the disclosure to the court of the Matco and Chemir reports showing that some of the emeralds had been treated with a modern epoxy. (Doc. 467 at 5; Doc. 481 at 5). To support this assertion, they selectively quoted Sullivan's statements from two sentences in an email, but egregiously excluded the introductory sentence of the email, which directly contradicted that allegation against Sullivan. The excluded sentence of Sullivan's email began "Hey guys, *I see that we have already filed* the Matco and Chemir reports and I know we owe the court an inventory (but I don't believe an appraisal)." (Doc. 467, Ex. D at 66 (Ex. M1-33). It is difficult to view such egregious wordsmithing as anything but a deliberate attempt to mislead the court on a highly material allegation or gross recklessness in the execution of counsel's function, particularly on a matter as sensitive as accusing a non-party of bad faith conduct in connection with a court proceeding.

Last, it is impossible to ignore the revelation, through the internal discussions among Motivation's attorneys and their client, that they targeted

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

Sullivan for a sanctions claim because of his ability to pay a judgment, what they called his "deep pockets." (*See* Doc. 555 at 2-3).[26] Given this self-interested financial motive, Motivation's counsel's misrepresentations to the court, at Sullivan's expense, look less like negligent drafting errors than intentional or reckless misconduct. In a related context, this Court has recognized that such evidence of "the attorney's subjective state of mind" offers "important" insight into the bad-faith calculus. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2006).

Notwithstanding this strong showing, the district court offered not a word of commentary on this evidence, let alone *any* analysis of Sullivan's subsidiary theory of Motivation's counsel's bad faith. The only reasonable conclusion to draw is that the district court overlooked this relevant evidence, which constitutes an abuse of discretion. *Sciarretta*, 778 F.3d at 1212 ("An abuse of discretion occurs when the district court . . . ignores or misunderstands the relevant evidence.").

## CONCLUSION

The district court's incomplete analysis and summary dismissal of Sullivan's sanctions claims require a reversal. Having been dragged through the mud at great

---

[26] Notably, these "deep pocket" discussions began in February 2013, long before the JTR/Miscovich Sanctions I trial and before Miscovich's fraud was revealed through the jeweler's testimony at that trial. (Doc. 555, Ex. A). Not even Miscovich or JTR had been sanctioned at that time, yet Motivation's counsel was already preoccupied with "the mission" of finding "a deep pocket," without which he was threatening to abandon the litigation. (Doc. 555, Ex. B).

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

personal expense by Motivation and its counsel, Sullivan is entitled to a more thorough consideration of his substantial claims of bad-faith conduct.


Dated:  June 27, 2016

<div style="margin-left: 40%;">

Respectfully submitted,

 *s/ Stephen F. Rosenthal*
Stephen F. Rosenthal
Fla. Bar No. 013158
Robert C. Josefsberg
Fla. Bar No. 040856
John Gravante, III
Fla. Bar No. 617113
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Tel.: 305-358-2800
Fax: 305-358-2382
srosenthal@podhurst.com
rjosefsberg@podhurst.com
jgravante@podhurst.com


*Counsel for Paul D. Sullivan*

</div>

**Podhurst Orseck, P.A**.
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 14,845 words in the brief.

*s/ Stephen F. Rosenthal*
Stephen F. Rosenthal

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **27**th day of June, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Stephen F. Rosenthal*
Stephen F. Rosenthal

**Podhurst Orseck, P.A.**
25 West Flagler Street, Suite 800, Miami, FL 33130 Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com