UNITED STATES COURT OF APPEAL
FOR THE ELEVENTH CIRCUIT
_____

CASE NO. 15-14132-D
_____

MOTIVATION, INC.

Claimant/Appellant,

vs.

JTR ENTERPRISES, LLC,

Plaintiff/Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION
CASE NO. 4:11-CIV-10074

---

REPLY MEMO IN SUPPORT OF APPELLEES YOUNG CONAWAY STARGATT & TAYLOR, LLP
AND BRUCE L. SILVERSTEIN'S MOTION FOR SANCTIONS

---

Jeffrey B. Crockett (FBN: 347401)
jcrockett@coffeyburlington.com
COFFEY BURLINGTON, P.L.
David J. Zack (FBN: 641685)
2601 South Bayshore Drive, Penthouse
Miami, Florida  33133
Telephone:  (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Young Conaway Stargatt & Taylor, LLP
and Bruce L. Silverstein, Esq.*

Appellees, Young Conaway Stargatt & Taylor LLP and Bruce Silverstein, hereby file this Reply in support of their Rule 38 Motion for Sanctions on Appeal (the "Motion"), and aver as follows:[1]

## Preliminary Statement

Motivation persistently re-fights a battle Motivation has already lost, and which Motivation knew it never had the ammunition to win in the first place. All the while, Appellees and this Court bear the costs of Motivation's wasted and fruitless exercise.

Through its appeal, Motivation asks this Court to reverse the denial of Motivation's motion for sanctions against Appellees, who were neither parties nor counsel of record for any party before the district court. Motivation sought sanctions solely pursuant to the district court's "inherent powers" (which Appellees contend do not apply to non-parties, such as Appellees), and it is undisputed that the court's exercise of such powers (if they existed) was both "discretionary" and required Motivation to prove by "clear and convincing" evidence that Appellees intentionally and knowingly participated in a fraud on the court.

Following an eleven-day Hearing, the district court denied Motivation's motion for sanctions, finding that Motivation **"was unable to present any evidence"** that Appellees intentionally or knowingly participated in any fraud. (DE568 at 55-56). By contrast, Appellees presented substantial testimony, documentary evidence, and character evidence and expert testimony supporting their defense. Through its Reconsideration Motion, Motivation moved the court to make findings of fact on specific issues Motivation claimed supported its rejected motion for sanctions. (DE573). The district court ruled that Motivation's

---

[1] Unless specifically defined herein, all capitalized terms have the meaning ascribed in Appellees' Motion. Motivation's response to Appellee's Motion is referred to and cited herein as the "Opposition."

1

proposed findings of fact were "not supported by the record or credible witness testimony." (DE592 at 2).

Motivation does not raise any legal error on appeal. Nor does Motivation challenge any evidentiary ruling. Motivation simply asks this Court to make contrary findings of fact than those made by the district court. Based on the applicable standard of appellate review (which is not in dispute), Motivation's appeal has no chance of success, is frivolous, and warrants the imposition of sanctions pursuant to Rule 38.

A. **Motivation Does Not Deny the Material Bases for Appellees' Motion**

Motivation's Opposition is far more significant for what it does not say than for what it does say. Among other things, Motivation's Opposition does **NOT** dispute any of the following (all of which are established in Appellees' Motion):

- There is substantial evidence in the Hearing record that would, if accepted by the district court (as it was), sustain the court's denial of Motivation's motion for sanctions;

- Motivation's recitation of the "facts" on appeal is pervaded by a failure to cite any of the abundant evidence favorable to Appellees, much less in the light most favorable to Appellees – all contrary to governing legal standards;

- Motivation does no more than restate and reargue facts and credibility issues previously ruled upon by the court below;

- Motivation's Opening Brief (as well as it Opposition) is rife with mischaracterizations of the testimony and exhibits, and littered with unsupported (and unsupportable) argumentative conclusions that Motivation attempts to substantiate by mischaracterizing emails and misquoting testimony and exhibits out of context (and sometimes without acknowledging that words have been excised);

- Motivation sought sanctions in the district court knowing full-well that there was no evidence that Appellees intentionally or knowingly participated in any fraud, and Motivation filed its motion to sanction Appellees in order to coerce a settlement of convenience;[2]

---

[2] Incapable of refuting the undisputed evidence that Motivation set its sights on Appellees because they were perceived as "deep pockets," Motivation seeks to "change the narrative" by arguing that Motivation's multiple internal e-mails simply reflect that Motivation would not pursue "impecunious" parties. (Opposition at 7-8). Appellees do not, however, seek sanctions from Motivation simply because it did not pursue other

2

- After sitting through the Admiralty Trial, Holloway – Motivation's own lead counsel at the Hearing – concluded and told Silverstein (who was sequestered from the trial) that Holloway was not convinced that Miscovich had committed fraud;
- Despite Motivation's belief, from the start, that Miscovich's claimed discovery was fraudulent, Motivation frivolously asserted a claim in the Admiralty Action that the *res* came from the *Atocha*, and Motivation sought to persuade Sullivan to "go along" with Motivation's charade, so that Motivation could fraudulently market the *res* as "*Atocha* emeralds";
- Motivation violated the Hobbs Act and blackmail statutes by telling witnesses that they could face indictments if they did not cooperate with Motivation; and
- Motivation improperly informed witnesses that they might avoid both civil and criminal liability if they cooperated with Motivation's efforts in the Admiralty Action

Motivation also does not address, much less distinguish, the numerous decisions cited on pages 4-6 of Appellees' Motion, which hold that Rule 38 sanctions are appropriate for appeals that simply register disagreement by the losing party with the district court's fact-findings.

There are other aspects of Appellees' Motion to which Motivation provides no meaningful response, but the foregoing are more than enough to support (if not compel) the imposition of sanctions pursuant to Rule 38.

**B.    Motivation's Few Responses to Appellees' Arguments are Without Merit**

The central issue below was whether Motivation proved by clear and convincing evidence that Appellees intentionally and knowingly participated in a fraud on the court. The only direct evidence on the subject was presented by Silverstein's testimony that Appellees acted in good faith and were not aware of any fraud. Silverstein's testimony was supported and corroborated by the testimony of multiple other witnesses, substantial contemporaneous documentary evidence, and character evidence

---

persons. Rather, sanctions are appropriate on appeal because Motivation caused, and continues to cause, Appellees to incur substantial legal fees and costs **while internally acknowledging in private email correspondence that Motivation knew it had no basis for doing so,** in the hope that its unethical pressure tactics would be rewarded with a settlement of convenience. Motivation's e-mails provide undisputed and incontrovertible proof of Motivation's bad faith efforts from beginning to end.

3

and expert testimony. The district court accepted the substantial testimony and evidence supportive of Appellees defense. Settled appellate jurisprudence dictates that the district court's credibility assessments and fact-findings are binding on Motivation on appeal.[3]

The frivolity of Motivation's appeal is established by Motivation's own assertion that the differences between the parties on appeal "amount to nothing other than disputes over the meaning and interpretation of the emails and other record evidence," and that "both sides are free to provide their own assessment as to their meaning and import." (Opposition at 14-15).[4] This is a concession that Motivation's appeal is frivolous, as an appeal is not the forum for weighing conflicting interpretations of the evidence. To the contrary, that is the exclusive province of the district court, which sat through an eleven-day Hearing, listened to the testimony, evaluated the witnesses, pored over the evidence, and concluded that Motivation failed to prove by clear and convincing evidence that Appellees intentionally and knowingly participated in any fraud. (DE568 at 55-56). This ruling is binding on Motivation on appeal, because this Court accepts facts in the light most favorable to the prevailing parties and resolves all disputes in their favor.[5]

In recognition of the fact that this Court will not overturn the district court's credibility assessments and fact-findings, Motivation

---

[3] *See, e.g., Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573-75 (1985); *United States v. Sparks,* 806 F.3d 1323, 1333-34 (11h Cir. 2015); *Solomon v. Liberty City Comm'rs.,* 221 F. 3d 1218, 1226-27 (11th Cir. 2000).

[4] Notably, Motivation does not even argue that the district court's "assessment" of the testimony and evidence was implausible. Indeed, Appellees respectfully submit that any ruling other than that reached by the district court would not have been supported by substantial evidence.

[5] *See also Rowell v. BellSouth Corp.*, 433 F.3d 794, 797-98 (11th Cir. 2005) (instructing that this Court "may affirm the district court 'on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below.'") (quoting *Powers v. United States*, 996 F.2d 1121, 1123-24 (11th Cir. 1993)).

makes the unsupportable assertion that "Judge King never made 'credibility' findings." (*See* Opposition at 7). Motivation's assertion is refuted by Judge King's express statement – in denying Motivation's request that Judge King adopt the very same findings that form the basis for Motivation's appeal – that "much of these proposed findings simply repeat findings already proposed by Motivation and rejected by his Court as not supported by the record or credible witness testimony when it entered its Opinion and Order Denying Sanctions." (DE592 at 2). There is simply no non-frivolous way to read this ruling to state anything other than that Judge King found Appellees' witness testimony was credible on key issues and Motivation's contrary witness testimony was not credible.[6]

Motivation also continues to cherry-pick isolated aspects of the Hearing record (often out of context), and continues to argue for a view of that record in the light most favorable to Motivation – all contrary to the applicable standard of review. In so doing, Motivation ignores the immense, weighty, and largely uncontradicted evidence that Appellees did not know that Miscovich had fabricated his claimed discovery of the *res*, including the substantial evidence of the genuine nature of Miscovich's

---

[6] Motivation's argument also is contrary to the settled appellate presumptions in favor of the district court's rulings. As this Court has instructed: "we and other appellate courts have inferred from a district court's explicit factual findings and conclusions implied factual findings that are consistent with its judgment although unstated[,]" and "if a trial judge fails to make a specific findings on a particular fact, the reviewing court may assume that the court impliedly made a finding consistent with its general holding so long as the implied finding is supported by the evidence." *United States v. $242,484 in U.S. Currency*, 389 F. 3d 1149, 152 (11th Cir. 2004)(internal citations and quotation omitted). *See also Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1127 (9th Cir. 2013) (noting that appellate courts "infer from the [district] court's denial of the City's motion that it made the determinations necessary to support its order"); *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291-92 (9th Cir. 1994) ("Although the district court did not expressly reason through its determination, its use of the word 'warranted' implicitly indicates that it considered [movant's] contention, but did not find that [respondent's] conduct rose to a level that required sanctions.").

5

claimed discovery that was regarded as sufficient by the New York Investors (who interacted with Miscovich and investigated his claim for nearly a year before Appellees ever met him), experts with the Smithsonian Institute, qualified gemologists, and investigative reporters from CBS News and "60 Minutes" – all of whom Chief Judge Moore found to have been deceived, along with Miscovich's "lawyers." Motivation goes so far as to acknowledge that the "lawyers" deceived by Miscovich included JTR's counsel of record in the Admiralty Action – lawyers who the record reflects knew as much (if not more) about Miscovich's discovery and the Discovery Site, as did Appellees. As such, Motivation's Opposition doubles down on the incoherence of Motivation's main Brief, in which Motivation accepts that counsel of record were truthful in testifying that they had no knowledge that Miscovich had sought to commit a fraud on the court prior to January 13, 2014, while arguing that it is, somehow, sanctionable for Appellees to fail to reach a contrary conclusion based on the same (or less) information that was available to counsel of record.[7]

---

[7] Motivation also wrests out of context the finding of Silverstein's "control" over certain aspects of the Admiralty Action. To be sure, Horan's engagement agreement required Silverstein's consent for three specified types of actions in the course of the litigation – namely (i) commencing any action, (ii) settling any action, or (iii) retaining any experts. (*See* M25 at ¶ 4). To be equally sure, however, Silverstein had no authority to compel Horan to do anything (much less anything with which Horan disagreed), and none of the specified actions for which Silverstein's consent was required were pertinent to Motivation's motion for sanctions. Furthermore, the Hearing record contains substantial evidence of numerous instances in which Silverstein's views were not sought and even disregarded when offered, and the court did not find that Silverstein was a puppeteer pulling the strings of counsel of record, nor in control of counsel of record in any respect. (*See* Appellees' Brief at 51-53). In light of the testimony of Horan, Siracusa, and Silverstein, all of whom testified that Horan and Siracusa jealously guarded their power and responsibility as counsel of record, no such finding could have been made. Thus, Motivation's attempt to sanction outside counsel, while acknowledging the propriety of the actions of counsel of record, is a fatal self-contradiction. Motivation's squid-like cloud of ink in its Opposition only seeks to obscure this undisputed reality.

6

In its Opposition, Motivation finally makes the acknowledgement – conspicuously absent from Motivation's main Brief – that Motivation's own lead counsel at the Hearing (Holloway) "did not see evidence of fraud presented in the admiralty case." (Opposition at 9). In so doing, however, Motivation fails to acknowledge that the Admiralty Trial explored the "epoxy" evidence and other credibility issues regarding Miscovich's story upon which Motivation attempts to base liability for Appellees. It makes no sense for Motivation to argue that Appellees must have understood from this evidence that Miscovich was attempting to commit a fraud on the court, while acknowledging that **Motivation's own Hearing counsel** concluded from that same evidence that Miscovich had not committed a fraud.

Nor is there any merit to Motivation's assertion that Silverstein "reversed his position" respecting his state of mind about Miscovich's claimed discovery during the summer of 2011. (*See* Opposition at 11). As explained in Appellees' Motion, the e-mail cited by Motivation (M-28) reflects Silverstein's rejection of a story by persons other than Miscovich. By contrast, while Silverstein may have had "doubts" and "questions" respecting various aspects of Miscovich's version of events, Silverstein consistently concluded that it was more probable than not that the emerald discovery was genuine, and he never concluded (prior to January 13, 2014) that Miscovich had purchased, rather than discovered, the emeralds Miscovich claimed to discover.[8] While Silverstein plainly was loyal to his clients (as required by applicable rules of professional responsibility) and suspicious of Motivation and its consultants (with

---

[8] This state of mind was almost universal, having been shown to have been held by Horan, Siracusa, and Sullivan – to mention only live trial witnesses. The district court confirmed the viability of this position by finding after the Admiralty Trial that the evidence supporting Miscovich's version of events was equally persuasive as that supporting Motivation's contrary version – a view shared by Motivation's own Hearing counsel, Holloway. (DE199).

7

good reason), there is no evidence that these views (so typical of skilled and ethical advocates) were not held in good faith, much less with knowledge and intent to facilitate a fraud on the court.[9]

Finally, Motivation's position that the district court's 58-page Opinion is insufficient to allow this Court to review the court's rejection of Motivation's motion for sanctions is close to incomprehensible – even if it were assumed (*arguendo*) that Rule 52 applied to rulings on motions (which it does not).[10]

**C.  Motivation's Extraneous Arguments Are Immaterial, Frivolous, and Built Upon Falsehoods (by Motivation) and Evidence Excluded Below**

Little response is warranted as to the extraneous arguments and misstatements in Motivation's Opposition. Nonetheless, for the sake of completeness, Appellees address some of the more egregious examples.

Motivation begins its Opposition by arguing about alleged "threats" to witnesses (which never occurred). At the Hearing, Motivation called

---

[9] In a last-ditch effort to overcome its inability to prove that Appellees knowingly or intentionally participated in a fraud on the court, Motivation invokes decisions under Rule 11, and argues that sanctions can be based on a negligence standard. (*See* Opposition at 6). This argument, which Motivation did not make in the district court, serves only to highlight the frivolity of Motivation's appeal, as it is indisputable (and has never been disputed by Motivation) that the Rule 11 duty of investigation rested **solely** with the counsel of record (*i.e.*, Messrs. Horan and Siracusa), and not with Appellees as outside counsel, who never entered an appearance for any party and did not sign any pleadings or motion papers. In the end, there is "no authority" to support Motivation's attempt to sanction attorneys for negligence under the "inherent powers" of the district court. *See Maynard v. Nygren*, 332 F. 3d 462, 471 (7th Cir. 2003).

[10] Motivation misconstrues Appellees' argument as being that Rule 52 does not apply because the "Hearing" was not a "trial." (*See* Opposition at 17-18). Appellees' argument is that the eleven-day Hearing was not "**an action** tried on the facts without a jury," but an evidentiary hearing on a "motion." (*See* DE582 at _3-6). In this regard, it is undisputed (and indisputable) that Appellees (i) were not "parties" to the proceedings below, (ii) were never served with a summons or even a Complaint, (iii) had no opportunity to file an Answer, assert affirmative defenses, counterclaims, or third-party claims, (iv) had no discovery of Motivation or its witnesses, and (v) had no opportunity to move for summary judgment or engage in other pre-trial procedures – all of which precede the trial of "an action" (before a jury or a judge without a jury).

no witness to testify about any alleged threats, and the court properly excluded Motivation's putative out-of-court evidence of such alleged threats – on hearsay grounds and on the basis that Appellees had no opportunity to cross-examine the persons Silverstein allegedly threatened.[11] As such, the district court did not find any threats or other improper conduct, and twice rejected Motivation's proposed findings on this subject as unsupported by the record.[12] In any event, the alleged threats about which Motivation complains consisted of nothing more than informing certain persons (in some cases through counsel) of potential litigation or liability if they provided false testimony or violated a Court-approved settlement agreement and related Court Order.[13]

Motivation also argues that Appellees had to have known that Miscovich fabricated his discovery based on the content of a memo Horan wrote in the summer of 2012 (M1-4) in connection with his subsequent motion to withdraw as counsel to JTR. But, the court excluded Horan's memo from evidence as against Appellees because it was never shared with them. (*See* DE543 at 50-51; Appellees' Brief at fn. 14). Moreover, Horan's memo states that he was withdrawing "without material adverse

---

[11] Nor did Appellees' expert witness concede – as Motivation baselessly argues on page 1 of its Opposition – that Silverstein's interaction with certain witnesses was unethical. Rather, at the Hearing, Motivation's counsel asked the expert witness if threatening witnesses would be ethical, and the expert witness naturally answered that threatening witnesses would be unethical. The expert witness did not, however, agree that Silverstein had threatened any witness, and Judge King twice rejected Motivation's assertions that any inappropriate threats occurred.

[12] *See* DE568 (Order Denying Motivation's Motion for Sanctions, which nowhere mentions, much less finds, that any witnesses were threatened despite Motivation's request for such findings); DE592 (Order Denying Motivation's Reconsideration Motion, which declines to accept Motivation's renewed request that the Court find that witnesses were threatened).

[13] Such statements would not be improper under cases such as *Blackmon v. Iverson*, Civil Action No. 01-CV-6429, 2002 U.S. Dist. LEXIS 18352, at *10-*14 (E.D. Pa. Sept. 26, 2002), *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 266 (S.D.N.Y. 2001), and *Phila. Reserve Supply Co. v. Nowalk & Assocs., Inc.*, Civil Action No. 91-0449, 1992 U.S. Dist. LEXIS 12745, at *19 (E.D. Pa. Aug. 25, 1992).

9

effect on JTR's interest." And, like Horan's subsequent motion to withdraw, Horan's memo documents his view that the Admiralty Action could be pursued ethically by JTR's counsel of record after Horan's withdrawal. As such, Horan's memo is consistent with the district court's ruling that Motivation failed to prove that Appellees knowingly or intentionally participated in any fraud in the court.

As a Hail Mary pass, Motivation refers to the possibility of a criminal investigation following up on Judge King's order below (*See* Opposition at 4). While federal investigators may investigate possible participants in the fraud found by the court – such as Mr. Elchlepp (identified by Motivation as involved, but who has never been charged) – any such "investigation" would not address Appellees, whose private and confidential emails and conversations already have been laid out in the record below, with the Court finding no evidence that they knowingly or intentionally participated in any fraud.

Finally, Motivation argues that Appellees filed their Motion to "shift the Court's attention from the merits." (*See* Opposition at 19-20). Not so. Appellees' filed their Motion to highlight the frivolity of Motivation's appeal, and to be compensated by Motivation for having to work through the appeal, which is the salutary intent of Rule 38.[14]

## CONCLUSION

Appellees respectfully request an award of double their legal fees and other costs as damages under Rule 38 in an amount to be determined by this Court following the submission of appropriately redacted time records of Appellees and their counsel.

---

[14] *See Burlington N. R. Co. v. Woods*, 480 U.S. 1, 7 (1987) ("Rule 38 affords a court of appeals plenary discretion to assess 'just damages' in order to penalize an appellant who takes a frivolous appeal and to compensate the injured appellee for the delay and added expense of defending the district court's judgment.").

10

Respectfully submitted,

COFFEY BURLINGTON, P.L.

By: <u>Jeffrey B. Crockett</u>
    Jeffrey B. Crockett
    Florida Bar No. 347401
    jcrockett@coffeyburlington.com
    David J. Zack
    dzack@coffeyburlington.com
    Florida Bar No. 641685
    2601 South Bayshore Drive
    Penthouse
    Miami, Florida  33133
    Telephone:  (305) 858-2900
    Facsimile:  (305) 858-5261

*Counsel for Young Conaway Stargatt & Taylor, LLP
and Bruce L. Silverstein, Esq.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on July 25, 2016, on all counsel or parties of record on the Service List below.

By **/s/ Jeffrey B. Crockett**

**SERVICE LIST**

| | |
|---|---|
| Arthur E. Lewis, Jr., Esq.<br>Marlow V. White, Esq.<br>LEWIS & WHITE, PLC<br>222 W. Georgia Street<br>P.O. Box 1050<br>Tallahassee, FL 32301<br>mvw@lewisandwhite.com<br>lawlaw@polaris.net<br><br>*Counsel for Appellant Motivation, Inc.* | Ken Sukhia, Esq.<br>SUKHIA LAW GROUP, PLC<br>902 N. Gadsden St.<br>Tallahassee, Florida 32303<br>ksukhia@sukhialawfirm.com<br><br>*Counsel for Appellant Motivation, Inc.* |