# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## CASE NO. 15-14132-D

_____

## MOTIVATION, INC.

### Claimant/Appellant,

### vs.

## JTR ENTERPRISES, LLC,

### Plaintiff/Appellee.


_____


On appeal from the United States District Court for the
Southern District of Florida, Miami Division
Case No. 4:11-Civ-10074

---

## APPELLEE YOUNG CONAWAY STARGATT & TALOR, LLP AND BRUCE L. SILVERSTEIN'S REPLY BRIEF ON CROSS APPEAL

---

Jeffrey B. Crockett (FBN: 347401)
jcrockett@coffeyburlington.com
COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261

*Counsel for Young Conaway Stargatt & Taylor, LLP*
*and Bruce L. Silverstein, Esq.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1, Appellees Young Conaway Stargatt & Taylor, LLP and Bruce L. Silverstein, Esq., hereby state the following individuals and entities with any known interest in the outcome of this appeal:

Kendall B. Coffey

Jeffrey B. Crockett

Stephen Elchlepp

Kim Fisher

John Gravante

David Horan

JTR Enterprises LLC

Hon. James L. King

Jay Miscovich

Hugh J. Morgan

Motivation Inc.

Hon. K. Michael Moore

Bruce L. Silverstein

John Siracusa

Paul D. Sullivan

John E. Tuthill

Marlow V. White

Young Conaway Stargatt & Taylor, LLP

David J. Zack

Appellee Young Conaway Stargatt Taylor, LLP has no parent corporation and no publicly held corporation owns 10% or more of it.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................C-1

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .........................................................................................1

ARGUMENT ................................................................................................3

I.     THE DISTRICT COURT LACKED JURISDICTION TO RESOLVE
       MOTIVATION'S SANCTIONS MOTION........................................3

       A.     Motivation Lacked Standing In The District Court .............3

       B.     The District Courts' "Inherent Powers" To Sanction Parties
              And Their Record Counsel Do Not Extend To Appellees...................7

       C.     The District Court Lacked Personal Jurisdiction Over
              Appellees, Who Were Never Validly Served With Legal
              Process ...............................................................................14

II.    THE DISTRICT COURT COMMITTED OTHER REVERSIBLE
       ERRORS...........................................................................................17

       A.     The District Court Erred in Awarding Motivation Sanctions.............17

       B.     The District Court Erred in Invading the Attorney-Client
              Privilege and Work-Product Immunity ...............................21

       C.     Judge King Erred in Finding That Silverstein "Substantially
              Controlled" JTR's Actions in the Admiralty Action .........21

CONCLUSION...........................................................................................27

CERTIFICATE OF COMPLIANCE..........................................................28

CERTIFICATE OF SERVICE ...................................................................29

SERVICE LIST...........................................................................................29

i

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) .................................................................... 6

*Am. Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.,*
  690 F.3d 1244 (11th Cir. 2012) ................................................ 6

*Amlong & Amlong, P.A. v. Denny's, Inc.,*
  500 F.3d 1230 (11th Cir. 2007) ................................................ 7

*Auburn Med. Ctr. v. Ala. State Health Planning & Dev. Agency,*
  848 So. 2d 269 (Ala. Civ. App. 2002) ...................................... 7

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,*
  841 F.2d 646 (5th Cir. 1988) .................................................. 17

*Boyd v. Homes of Legend, Inc.,*
  188 F.3d 1294 (11th Cir. 1999) ................................................ 1

*Cent. Delta Water Agency v. United States,*
  306 F.3d 938 (9th Cir. 2002) .................................................... 5

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) .......................................................... 7, 8, 9, 14

*Conwill v. Greenberg Traurig, L.L.P.,*
  448 Fed. App'x 434 (5th Cir. 2011) ........................................ 23

*Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day*
  *Saints v. Associated Contractors, Inc.,*
  877 F.2d 938 (11th Cir. 1989) ................................................ 18

*Fid. Nat. Fin., Inc. v. Friedman,*
  2010 WL 960420 (D. Ariz. 2010) .......................................... 15

*Flaksa v. Little River Marine Const. Co.*,
   389 F.2d 885 (5th Cir. 1968) ...................................................... 8

*Florida Pub. Interest Research Group Citizen Lobby, Inc. v. E.P.A.*,
   386 F.3d 1070 (11th Cir. 2004) ................................................... 5

*Helmac Products Corp. v. Roth (Plastics) Corp.*,
   150 F.R.D. 563 (E.D. Mich. 1993) .................................... 9, 14, 22

*In re VIII S. Michigan Associates*,
   175 B.R. 976 (Bankr. N.D. Ill. 1994) ........................... 10, 14, 16

*Kelly v. Harris*,
   331 F.3d 817 (11th Cir. 2003) ..................................................... 7

*Leventhal v. New Valley Corp.*,
   148 F.R.D. 109 (S.D.N.Y. 1993) ......................................... 10, 14

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ............................................................ 6-7

*Lujan v. Defenders of Wildlife*,
   594 U.S. 555 (1992) ................................................................ 5, 6

*Maynard v. Nygren*,
   332 F.3d 462 (7th Cir. 2003) ..................................................... 8

*McGuire v. Sigma Coatings, Inc.*,
   48 F.3d 902 (5th Cir. 1995) ...................................................... 16

*Mendoza v. U.S. Atty. Gen.*,
   327 F.3d 1283 (11th Cir. 2003) ............................................... 20

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
   2 F.3d 1397 (5th Cir. 1993) ....................................................... 8

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
   86 F.3d 464 (5th Cir. 1996) ................................................. 9, 10

*Palomar Pomerado Health Sys. v. Belshe*,
 180 F.3d 1104 (9th Cir. 1999) .................................................................. 7

*Roadway Exp., Inc. v. Piper*,
 447 U.S. 752 (1980) ............................................................................. 8, 9

*Sciarretta v. Lincoln Nat. Life Ins. Co.*,
 778 F.3d 1205 (11th Cir. 2015) ............................................................ 11

*Sierra Club v. Babbitt*,
 995 F.2d 571 (5th Cir. 1993) ................................................................... 7

*State ex rel., Shawnee County Sheriff's Office v. $551, 985.00 U.S. Currency*,
 235 P.3d 1268 (Kan. Ct. App. 2010) ....................................................... 5

*Thompson v. RelationServe Media, Inc.*,
 610 F.3d 628 (11th Cir. 2010) ................................................................. 7

*Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*,
 546 F. Supp. 919 (S.D. Fla. 1981) ........................................................... 4

*Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*,
 569 F.2d 330 (5th Cir. 1978) ................................................................... 3

*Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*,
 640 F.2d 560 (5th Cir. 1981) ............................................................... 3, 4

*United States v. $38,570 U.S. Currency*,
 950 F.2d 1108 (5th Cir. 1992) ................................................................. 5

*United States v. $57,790.00 in U.S. Currency*,
 263 F. Supp. 2d 1239 (S.D. Cal. 2003) .................................................... 5

*United States v. Elmes*,
 532 F.3d 1138 (11th Cir. 2008) ............................................................. 15

*United States v. Real Prop. Located at Section 18, Tp. 23, Range 9,
 Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake,
 Olympic Nat. Park, Grays Harbor County, WA.*,
 976 F.2d 515 (9th Cir. 1992) ................................................................... 5

*United States v. Williams*,
    790 F.3d 1059 (10th Cir. 2015) ................................................ 14

*Universal Oil Products Co. v. Root Ref. Co.*,
    328 U.S. 575 (1946) ............................................................ 6, 16

*Waffenschmidt v. Mackay*,
    763 F.2d 711 (5th Cir. 1985) ................................................ 16

## <u>Statutes</u>

20 U.S.C. § 1927 ...................................................................... 7

## <u>Rules</u>

Fed. R. App. P. 28.1(c)(2)(A)(i) ............................................ 1

Fed. R. App. P. 28.1(e)(2)(B)(i) ............................................ 28

Fed. R. App. P. 32(a)(5) ....................................................... 28

Fed. R. Civ. P. 4.1(a) ............................................... 15, 16, 17

Fed. R. Civ. P. 4.1(b) ............................................................ 16

# INTRODUCTION[1]

Appellees' cross-appeal challenges the district court's jurisdiction to entertain Motivation's motion for sanctions on three separate and independent grounds. *First*, Motivation lacked standing in the district court. *Second*, the district court's "inherent powers" to sanction parties and their counsel of record do not extend to Appellees, who were neither parties nor counsel of record for any party in the Admiralty Action. *Third*, Appellees were never validly served with legal process. If Appellees prevail in their cross-appeal, all rulings issued in connection with Motivation's sanctions motion should be vacated *nunc pro tunc*. *See, e.g.*, *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999) ("When the lower court lacks jurisdiction, we have jurisdiction on appeal for the sole purpose of correcting the lower court's error in entertaining the suit.").[2]

Motivation's Reply Brief is longer than permitted by this Court's rules.[3] Even with Motivation's self-allotted additional length, however, Motivation has little to say about the serious jurisdictional issues raised by Appellees. The gist of Motivation's

---

[1] All undefined capitalized terms are defined in the Answer Brief of Appellees Young Conaway Stargatt & Taylor, LLP and Bruce L. Silverstein and Initial Brief on Cross Appeal ("Appellees' Brief"). Motivation's Reply Brief and Answer Brief on Cross Appeal is referred to as the "Reply Brief."

[2] Appellees' cross-appeal also challenges other rulings of the district court, which are discussed more fully in Argument II of this brief.

[3] Motivation's Certificate of Compliance acknowledges that its Reply Brief contains 15,398 words, which materially exceeds the 14,000 word limit of Fed. R. App. P. 28.1(c)(2)(A)(i).

argument is that bedrock principles of standing, subject matter jurisdiction, and personal jurisdiction are trivial technicalities that may be dispensed with when there is a claim of fraud on the court. Unsurprisingly, the law rejects Motivation's result-oriented approach.

**ARGUMENT**

## I.    THE DISTRICT COURT LACKED JURISDICTION TO RESOLVE MOTIVATION'S SANCTIONS MOTION

### A.    Motivation Lacked Standing In The District Court

Motivation injected itself into the Admiralty Action with a claim in intervention that was, itself, fraudulent.  Specifically, Motivation claimed to own the emeralds for which JTR sought title, alleging that (i) Motivation owned all cargo on two Spanish galleons that sank in the Atlantic Ocean in the Seventeenth Century, and (ii) the emeralds were cargo on one of the two galleons, and floated in a barrel against prevailing currents to where Miscovich claimed to find the emeralds, more than 25 nautical miles from the galleons' wreck-sites.  (*See* DE10).  Motivation's claim was so implausible that Judge King observed that "nobody believes" it, including Motivation's President, and that it would be "pretty miraculous if he did." (DE544 at 328).

Motivation's claim also was legally frivolous, as it was based on a 1976 court order (the "1976 Order") that had been vacated, in pertinent part, on appeal, and further limited on remand of a subsequent appeal.  Specifically, (i) *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 569 F.2d 330 (5th Cir. 1978) limited the 1976 Order to the parties to that litigation, and clarified that the order was not binding on any persons "who are not parties or privies to this litigation" (*see id.* at 335); (ii) *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 640 F.2d 560 (5th Cir. 1981) directed the district court to "make a

fresh and complete record" respecting Treasure Salvors' claim (*see id.* at 571); and *Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel*, 546 F. Supp. 919 (S.D. Fla. 1981) denied Treasure Salvors ownership rights to any cargo located beyond a specified "Injunctive Area" (*see id.* at 930). It is undisputed that (i) JTR was not a party to the litigation that gave rise to the 1976 Order, and (ii) the Injunctive Area specified by the remand decision is more than 25 nautical miles from the Salvage Site identified in the Admiralty Action. Accordingly, Motivation's claimed ownership of the emeralds was based on a misrepresentation of the 1976 Order, and Motivation had no legally cognizable ownership interest in the emeralds – even if it were assumed (arguendo) that the emeralds had been cargo on one of the galleons, which miraculously floated in a barrel against prevailing currents for more than 25 miles from the Injunctive Area.

Based on the foregoing, JTR successfully moved to dismiss Motivation's complaint in intervention. (*See* DE92). In a desperate move to remain in the case, Motivation fabricated a theory of a theft of emeralds from Motivation – which Motivation had no basis to believe to be true. (*See* DE94; DE97). Less than two months later, however, Motivation conceded it lacked any ownership interest in the emeralds, and moved to dismiss its fabricated claim, while reserving the right to pursue sanctions. (*See* DE118). Judge King declined to permit Motivation to dismiss its claim while simultaneously pursuing sanctions. Accordingly, Motivation remained

in the case despite Motivation's concession that it lacked any ownership interest in the emeralds.[4]

It is black letter law that standing to intervene in an *in rem* action to contest an award of property requires an ownership interest in the "*res*." *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1112 (5th Cir. 1992); *United States v. Real Prop. Located at Section 18, Tp. 23, Range 9, Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake, Olympic Nat. Park, Grays Harbor County, WA.*, 976 F.2d 515, 520 (9th Cir. 1992). Moreover, standing must be "proved," and failure of proof is fatal to a "claim" of standing. *See Lujan v. Defenders of Wildlife,* 594 U.S. 555, 560-61 (1992); *see also Florida Pub. Interest Research Group Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004). Applied to an *in rem* action to obtain title to property, an intervenor lacks standing to contest the petitioner's claim unless the intervenor can prove it owns the *res*, and it is insufficient to simply allege ownership at the pleading stage. *United States v. $57,790.00 in U.S. Currency*, 263 F. Supp. 2d 1239, 1242 (S.D. Cal. 2003); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002)); *see also State ex rel., Shawnee County Sheriff's Office v. $551, 985.00 U.S. Currency*, 235 P.3d 1268, 2010 (Kan. Ct. App. 2010) Kan. App. LEXIS 540, *23-24 (Kan. Ct. App. 2010) (intervenor lacked standing to contest

---

[4]    Motivation repeatedly asserts that Judge King "required" Motivation to remain in the case to aid the court in determining whether Miscovich committed fraud on the court. That is false. Motivation could have voluntarily withdrawn from the Admiralty Action at any time, but did not want to do so hoping to monetize its effort to obtain "sanctions."

forfeiture where it failed to prove ownership of *res*). Motivation's admission that it did not own the emeralds (*i.e.*, the *res* of the Admiralty Action) in Motivation's motion to dismiss its own claim (DE118) was a concession that Motivation lacked standing in the district court.

*Lujan* and its progeny instruct that a claimant lacks standing to participate in a district court action, even if the claimant initially made facially sufficient, but ultimately disproven, allegations that would support standing. That is precisely what happened here. As an intermeddler traveling under a false claim, Motivation lacked standing to participate in the Admiralty Action. As such, Motivation has (i) no legally viable claim of harm from any "fraud on the court," (ii) nobody but itself to blame for the costs of its own misuse of the judicial system, and (iii) no right to seek sanctions (much less from Appellees).[5]

Judge King never addressed Appellees' challenge to Motivation's standing. This Court, however, has recognized that standing is "crucial" and "'perhaps the most important of [the jurisdictional] doctrines.'" *Am. Civil Liberties Union of Florida, Inc. v. Dixie County, Fla.*, 690 F.3d 1244, 1247–49 (11th Cir. 2012) (brackets in original) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated by Lexmark Intern.,*

---

[5]     The result would be the same if it were assumed (*arguendo*) that Motivation could, somehow, be viewed as *amicus curiae* (even though no motion was made to proceed in that capacity), as *amici* cannot recover their attorneys' fees as sanctions in a proceeding conducted pursuant to the court's inherent powers to determine if there was a fraud on the court. *See Universal Oil Products Co. v. Root Ref. Co.*, 328 U.S. 575, 580–81 (1946).

*Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014)). Standing is so

critical that this Court lacks jurisdiction to address any aspect of Motivation's appeal

if Motivation lacked standing to press its claim in the district court. *See*, *e.g.*, *Kelly v.*

*Harris*, 331 F.3d 817 (11th Cir. 2003).[6] As such, Motivation's lack of standing in the

district court compels the *vacatur* of the entirety of the jurisdiction-less sanctions

proceedings below. *See*, *e.g.*, *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d

1104 (9th Cir. 1999) (dismissing appeal and vacating district court's ruling based on

plaintiff's lack of standing), *cert denied*, 528 U.S. 1074 (2000).

### B.   The District Courts' "Inherent Powers" To Sanction Parties And Their Record Counsel Do Not Extend To Appellees

As Judge King recognized (and Motivation concedes), neither Rule 11 nor 28

U.S.C. §1927 ("Section 1927") has any application to Appellees, and the sole ***alleged***

basis for sanctioning Appellees was the district court's "inherent powers" under

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  (*See* DE568 at 49).[7]  Appellees

---

[6]     *See also Auburn Med. Ctr. v. Ala. State Health Planning & Dev. Agency*, 848 So. 2d 269, 272 (Ala. Civ. App. 2002) (dismissing appeal based on appellant's lack of standing in lower court). *Accord Sierra Club v. Babbitt*, 995 F.2d 571, 574 (5th Cir. 1993) ("intervenors who wish to prosecute an appeal on their own must separately fulfill the injury, causation, and redressability requirements of Article III.").

[7]     Notwithstanding Judge King's ruling, and Motivation's own concession, Motivation cites inapposite cases applying Rule 11 and Section 1927 to support its argument for a "negligence" standard pursuant to the district court's inherent powers. *See*, *e.g.*, Reply Brief at 1-2 (citing *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628 (11th Cir. 2010) and *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2007)).  As the Seventh Circuit has ruled, however, there is "no authority" to sanction attorneys for negligence or lack of

already have explained, at length, why the district court's inherent powers do not extend to Appellees. *See* Appeal Dismissal Motion at 11-17; Appeal Dismissal Reply at 8-9. Accordingly, Appellees will be brief herein.

*Chambers* supports the district court's inherent powers to "control admission to its bar and to discipline attorneys who appear before it." *Chambers*, 501 U.S. at 43. These powers stem from "[t]he power of a court over members of its bar." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the courts"), *cert. denied*, 510 U.S. 1073 (1994) (internal citations omitted); *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 888 n.10 (5th Cir. 1968) (tracing the origins of inherent powers to "[t]he power of a court to discipline members of its own bar") (internal citations omitted). Those powers do not extend to Appellees, who were not Record Counsel and not admitted to practice before the district court (generally or *pro hac vice*).

Moreover, the Supreme Court has cautioned that inherent powers "must be exercised with restraint and discretion" both "[b]ecause of their very potency" and "[b]ecause they are 'shielded from direct democratic controls.'" *Chambers*, 501 U.S.

---

diligence under the court's inherent powers. *See Maynard v. Nygren*, 332 F.3d 462, 471 (7th Cir. 2003). Moreover, Motivation made no such argument below, and cannot do so, for the first time, on appeal.

at 45; *Roadway Exp., Inc.*, 447 U.S. at 764. Quoting the Fifth Circuit, *Chambers* also instructed that inherent powers are "not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *Chambers*, 501 U.S. at 45. Accordingly, "[t]he threshold for the use of the inherent power sanction is high[,]" and "[s]uch powers may be exercised only if essential to preserve the authority of the court[.]" *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Judge King disregarded *Chambers'* directions that the inherent powers analysis must be narrowly channeled. Instead, Judge King relied on dictum from *Helmac Products Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563 (E.D. Mich. 1993), to the effect that district court's inherent powers extend to non-parties who "substantially participate" in the litigation and have a "substantial interest" in its outcome. The narrow holding of *Helmac*, however, was that the inherent powers extended to a non-party because the non-party was the "real party in interest." The specific issue in *Helmac* was the destruction of documents by a non-party who was "the principal shareholder and chief executive officer of a party" – which the *Helmac* court found to be "virtually tantamount to the destruction of evidence by the party itself." *Id.* at 568. As such, the result in *Helmac* was unexceptionable. Neither *Helmac* nor any other precedent holds that the district court's inherent powers extend to referring counsel, who are not counsel of record before the court.

It is routine for referring counsel to assist in managing litigation in which they do not appear by, among other things, selecting counsel of record, facilitating discovery, assisting with strategy, performing research, and drafting or editing papers to be filed with the court. Before Judge King's decision herein, no court had ever suggested, much less held, that such conduct of referring counsel subjects them to the district court's inherent powers to grant sanctions. Indeed, the only courts to specifically address the issue have ruled that inherent powers do not extend beyond counsel of record – even when others "called the shots" on some issues. *See Leventhal v. New Valley Corp.*, 148 F.R.D. 109, 112 (S.D.N.Y. 1993); *In re VIII S. Michigan Associates*, 175 B.R. 976, 984 (Bankr. N.D. Ill. 1994). These decisions make perfect sense inasmuch as the non-delegable mandates of Rule 11 require that counsel of record perform a diligent investigation to confirm that all allegations in a case are supported by the evidence and have a viable legal basis. (*See* Appellee's Brief at 51). As such, Appellees were entitled to rely on Record Counsel to perform their non-delegable duties, and an extension of the inherent powers to Appellees is ***not***, and cannot be, "essential to preserve the authority of the court[.]" *Natural Gas Pipeline Co. of America*, 86 F.3d at 467.

In any event, Judge King did not even find that Silverstein "substantially ***participated***" in the Admiralty Action, and there is no evidence that Silverstein "***participated***" in the Admiralty Action at all (other than as a witness, and there is no

claim that Silverstein provided anything but truthful testimony).[8]  Rather, Judge King

found that Silverstein "substantially *controlled* JTR's actions in these proceedings."

(*See* DE568 at 55).  Inasmuch as the only sanction entered against JTR was based on a

four-month delay in production of preliminary information regarding "modern

materials" on some emeralds at issue, Judge King's finding is a *non-sequitur* as to the

issue of "fraud on the court" for which Motivation sought sanctions from Appellees.[9]

Of equal significance, Judge King did not find, and could not have found, that

Silverstein's influence over the Admiralty Action exceeded or superseded Record

Counsel's ultimate control of the litigation – as Record Counsel (both Horan and

Siracusa) both testified to the contrary.  (*See* DE543 at 132, DE544 at 296).

Even if it were assumed (arguendo) there were some scenario in which the

district court's inherent powers might extend to referring counsel, the proffer made by

Motivation was not one to pioneer in this regard.  Motivation did *not* claim that

(i) Appellees assisted Miscovich in fabricating his claim, (ii) Appellees had any

personal knowledge of the facts with respect to Miscovich's alleged discovery, or

(iii) Appellees fabricated evidence or lied to the Court.  Instead, as Judge King found

---

[8]  This case does not raise issues of bad-faith discovery abuse by a witness, as in *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205 (11th Cir. 2015), where sanctions were imposed for a non-party's bad faith in its capacity as a witness. Moreover, the sanction sustained in *Sciarretta* was limited to requiring the non-party to "cover" a separate fee award that had been imposed on the party for whose benefit the sanctions were awarded.  *See id.* at 1214.  The movant was not awarded any of its own attorneys' fees (for seeking sanctions or otherwise).

[9]  Moreover, Silverstein contests the finding of "substantial control" for the reasons addressed in the final argument in this brief.

(and Motivation concedes), at the time of the referral to very experienced maritime counsel, "Silverstein had been presented with circumstantial evidence that seemed to support [Miscovich]'s story of discovery of a valuable find and the genuineness of the find." (*See* DE568 at 56). Motivation only argued that Appellees should have performed more "diligence" to investigate "doubts" and questions with regard to Miscovich's claim. But, the duty to investigate and perform diligence is precisely the non-delegable duty of Record Counsel pursuant to Rule 11, and not the responsibility of Appellees, who did not sign any pleadings or motion papers in the Admiralty Action and were not even admitted *pro hac vice*.

Finally, Motivation did not seek sanctions from Record Counsel (under Rule 11, Section 1927, or the Court's inherent powers), and Motivation did not dispute the testimony of Horan or Siracusa that their own conduct was, at all times, ethical and proper – including (i) Horan's commencement of the Admiralty Action despite his knowledge of the "non-Spanish coins" before doing so, (ii) Horan's and Siracusa's prosecution of the Admiralty Action despite their knowledge of the "non-Spanish coins," the "20-pound group," reports of "modern substances" on the emeralds, and other supposed "red flags" claimed by Motivation, (iii) Horan's and Siracusa's joint decision to refrain from disclosing information first learned in December 2011 about modern substances on the emeralds until the filing of the Third Status Report in April 2012, (iv) Horan's withdrawal from the Admiralty Action in October 2012 without asserting that there was any fraud on the court (which Horan would have been

ethically obliged to do if he had seen proof of such a fraud), (v) Siracusa's trial of the Admiralty Action in December 2012, and (vi) Siracusa's defense of Motivation's sanctions motion through the conclusion of the First Sanctions Hearing in January 2013.

It is an inherent fallacy for Motivation to contend that issues fully vetted with Record Counsel could be the basis for sanctions against Appellees when no sanctions were sought against Record Counsel on these same issues.[10] If Record Counsel acted in a manner that was not worthy of sanctions pursuant to the court's inherent powers (as admitted by Motivation), it cannot be "necessary," "essential," or even *permissible*, to sanction Appellees under those same powers.

While Appellees are second to none in their condemnation of any false testimony in the Admiralty Action or any other case, its occurrence did not provide a legal warrant for an inquisition of Appellees (which failed to uncover any improprieties, in any event). If the rule were otherwise, every rejection of a party's testimony as untrue would present an opportunity for the opposing party to conduct a

---

[10] Motivation relied on other evidence it developed in *ex parte* discovery after the Admiralty Trial was concluded, which was not served on Appellees (and which Appellees had no ability to cross-examine), and which in most cases was unknown by Appellees. Motivation also sought to rely, and continues to seek to rely on appeal, upon evidence that the district court excluded from Motivation's case against Appellees. (*See* Reply Brief at 6) (Motivation continuing to rely upon Exhibit M1-4, which was excluded from evidence as against Appellees at DE543 at 50-51). Plainly, this evidence is immaterial to the issue of whether Appellees knowingly participated in a fraud on the court, which is the only issue before the district court.

far-reaching post-trial inquest into the knowledge and participation of all sorts of non-parties. Such a waste of judicial effort is neither compelled nor allowed by "inherent powers" jurisprudence – as recognized in *Leventhal* and *VIII South Michigan Associates*.

Judge King's assertion of inherent powers over Appellees extends *Chambers* and its progeny (including *Helmac*) beyond their breaking point. The proceedings below exceeded the court's subject matter jurisdiction, and should be vacated. *See United States v. Williams*, 790 F.3d 1059 (10th Cir. 2015), *cert. denied,* 136 S. Ct. 604 (2015) (ordering dismissal of action for lack of subject matter jurisdiction where there was no "inherent power" to sanction respondent).

## C. The District Court Lacked Personal Jurisdiction Over Appellees, Who Were Never Validly Served With Legal Process

Following the Admiralty Trial – in which Appellees did not participate – Judge King found the evidence respecting Miscovich's claimed discovery was in equipoise. (DE199). Thereafter, Motivation pursued extensive post-trial discovery – again not involving Appellees – in an effort to establish that Miscovich (by then deceased) had given false testimony at the Admiralty Trial. (DE445).

A year after the Admiralty Trial, Motivation requested sanctions against Appellees, who were not present nor represented at the sanctions hearing. Chief Judge Moore (assigned due to Judge King's then-extended illness) ruled that (i) Appellees were not subject to the court's jurisdiction, and (ii) Motivation failed to

serve Appellees with legally valid process. (*See* DE332; DE333; DE445 at 3). Chief Judge Moore also observed that it would be "unfair" to drag Appellees into this matter after discovery and other proceedings were completed without their involvement. (DE373 at 112:24 to 113:9).

Judge King returned to the case. Judge King disregarded the jurisdictional and fairness concerns identified by Chief Judge Moore, and accepted Motivation's invitation for an inquisition of Appellees' knowledge of Miscovich's actions by an order to show cause (the "OSC"). (DE407; DE451). Further, Judge King required Appellees to respond to the OSC without any discovery.

In ordering service of the OSC on Appellees in Delaware (DE 451), and denying Appellees' Motion to Quash (DE459; DE463; DE488), Judge King disregarded the plain language of Fed. R. Civ. P. 4.1(a), which provides that process other than a summons or subpoena "may be served anywhere ***within the territorial limits of the state where the district court is located*** and, if authorized by a federal statute, beyond those limits" (emphasis added). *See United States v. Elmes*, 532 F.3d 1138 (11th Cir. 2008), 1144 (11th Cir. 2008) (Rule 4.1 "governs service of process other than a summons or subpoena"); *Fid. Nat. Fin., Inc. v. Friedman*, CIV03-1222 PHX RCB, 2010 WL 960420 (D. Ariz. 2010) (service of OSC is governed by Rule 4.1(a)). Because no statute provides otherwise, the OSC could be served only in Florida, and its service in Delaware was insufficient to trigger personal jurisdiction over Appellees. *See Fidelity Nat. Financial, Inc.*, 2010 WL 960420 (finding no

jurisdiction over non-parties where Rule 4.1(a) was not complied with, and holding that actual notice of OSC is immaterial); *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995) (no personal jurisdiction found over in-house counsel who was not served with valid process in inherent powers sanction case).[11]

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946) – cited by Judge King – highlights the need for compliance with the rules, stating that (i) persons could be brought before the district court "by appropriate means," and (ii) "the usual safeguards of adversary proceedings must be observed." *Id.* at 580. Plainly, those "appropriate means" and "usual safeguards" include compliance with

---

[11] Rule 4.1(b) provides for nationwide service of process in the limited circumstance of "[a]n order committing a person for civil contempt of a decree or injunction issued to enforce federal law." *Accord Waffenschmidt v. Mackay*, 763 F.2d 711, 718-19 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986) ("a court may assert jurisdiction over persons who, with knowledge of the court's orders, actively aid and abet an enjoined party"). Rule 4.1(b) adds, however, that "[a]ny other order in a civil-contempt proceeding may be served only in the state where the issuing court is located or elsewhere in the United States within 100 miles from where the order was issued." *Accord* Judge William W. Schwarzer et al., Federal Civil Procedure Before Trial §13:247 (2007) (instructing that orders to show cause "must be served in the state in which the district court is located or within 100 miles from the courthouse in which it was issued"). The narrow rule permitting extraterritorial service of process for "contempt of a decree or injunction issued to enforce federal law" plainly does not apply here. Accordingly, the district court lacked personal jurisdiction over Appellees who were not validly served with the OSC. *See, e.g., McGuire*, 48 F.3d 902 (jurisdiction lacking to sanction respondent who was not validly served with legal process where "unlike *Waffenschmidt*, there is no assertion that [respondent] disobeyed or aided others in disobeying any order of the district court."); *In re VIII S. Mich. Assocs.*, 175 B.R. 976, 986 (Bnkr. N.D. Ill. 1994) (holding that valid service of process is required where "no court order has been violated").

Rule 4.1(a), which Judge King disregarded. Motivation's argument that the importance of the court's inherent powers excuses non-compliance with the law gets the matter precisely wrong. Unsurprisingly, no decisional law (anywhere) supports the imposition of sanctions on a non-party who has not been validly served with legal process. Because Appellees were never validly served with legal process, the sanctions proceedings against Appellees are void for lack of personal jurisdiction. *See*, *e.g.*, *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 650 (5th Cir. 1988).

## II. THE DISTRICT COURT COMMITTED OTHER REVERSIBLE ERRORS

Appellees also have cross-appealed (i) the orders awarding attorneys' fees to Motivation against JTR and Miscovich, (ii) the invasion of the attorney-client privilege and appellees' work-product, and (iii) Judge King's finding that Silverstein "substantially controlled" the Admiralty Action. (*See* Notice of Cross-Appeal, filed on September 28, 2015). These issues are addressed, in turn, below.

### A. The District Court Erred in Awarding Motivation Sanctions

Motivation does not (and cannot) contend that the district court had jurisdiction to award any sanctions to Motivation if Motivation lacked standing in the district court. Accordingly, if Appellees prevail on that aspect of their cross-appeal, all awards of sanctions to Motivation should be reversed and vacated.[12]

---

[12] Motivation argues that Appellees lack standing to appeal the award of sanctions to Motivation – even if the district court lacked subject matter jurisdiction to

Nor does Motivation seriously dispute it was error to sanction JTR for its Record Counsel's failure to voluntarily disclose potentially adverse information at a time when that Record Counsel was actively engaged in a good faith investigation of the validity and significance of the information, and there was no danger that the court would act on JTR's request for final relief while the investigation was pending – facts that are undisputed and indisputable in this matter. For instance, Motivation does not dispute the testimony of Record Counsel (Horan) that JTR's filings – including the content and timing of filing of all Status Reports – fully complied with the law and all of counsel's ethical duties. (DE543 at 135-36). Nor has there been any suggestion,

---

grant them. (*See* Reply Brief at 35). Motivation is wrong. Appellees have standing to challenge the award of sanctions to Motivation against JTR and Miscovich because of the potential for collateral estoppel or other preclusive effect of such rulings on Appellees – as explained in Appellees' Jurisdictional Response, to which Appellees respectfully refer the Court. In any event, it would be unjust if Motivation were entitled to benefit from a ruling it obtained through the irregularities that were timely and properly raised below – especially since (i) Appellees have properly raised Motivation's lack of standing to obtain sanctions in connection with aspects of Appellees' cross-appeal that Motivation concedes to be properly before the Court, (ii) JTR lacked Record Counsel when Motivation commenced this appeal, and JTR (as an entity) lacked the capacity to cross-appeal (or even defend itself) *pro se*, (iii) Miscovich, who was both deceased and tried *in abstentia*, without counsel, and without even having been served with judicial process, and (iv) Motivation's lack of standing goes to the heart of the district court's subject matter jurisdictional and is non-waivable and capable of being asserted at any time – including following this appeal. *Accord Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938, 939 n.1 (11th Cir. 1989) (noting that "it would be unjust" to refuse to consider issues supporting the reversal of sanctions against party below that did not docket an appeal, but where related sanctions issues were otherwise properly before the court and being pursued by other parties that had docketed an appeal).

much less any finding, that (i) JTR failed to comply with any pertinent discovery request, or (ii) JTR made any statement to the court that JTR knew to be inaccurate prior to the time that JTR filed the Third Status Report, which disclosed the existence of modern substances on some of the emeralds – thereby discounting (but not necessarily disproving) the accuracy of the archeologist's speculation that the emeralds were from a Colonial-era ship, but not disproving that the emeralds had been found in the sea, as Miscovich claimed to have occurred.

Motivation's exclusive effort to refute the lack of any legal basis to sanction JTR for the four-month period in which JTR's Record Counsel delayed disclosure of the information disclosed in the Third Status Report is to argue that "JTR and Miscovich lied to the court, devised and carried out a scheme to defraud the court and practiced upon the court a major and criminal fraud striking at the heart of the justice system." (Reply Brief at 34-35). The district court, however, made no such finding with respect to JTR, and expressly declined to sanction JTR for Miscovich's fraud on the court. The district court reiterated this refusal in denying Motivation's motion for reconsideration on this very point. (D.E. 448 at 1-2; DE450 at 3). In this appeal, Motivation does not challenge Chief Judge Moore's decision that Record Counsel's four-month delay in filing the Third Status Report provided the sole basis for sanctioning JTR. Nor does Motivation challenge Chief Judge Moore's express

rejection of Motivation's effort to obtain sanctions from JTR for Miscovich's fraud on the court.[13]

Further, the responsibility for the timing of the disclosure of the information in the Third Status Report rested, as a matter of law, with JTR's Record Counsel (and not JTR), who all concede to have been ethical throughout the proceedings – as Chief Judge Moore expressly found. (*See* DE373 at 131:23 to 132:6). As such, Motivation's position is caught in yet another impossible contradiction with the admitted facts.[14]

Significantly, the absence of any valid basis to sanction JTR or its Record Counsel provides further support for the aspect of Appellees' cross-appeal that challenges the existence of the district court's inherent powers to sanction Appellees (and also provides a separate and independent basis for affirming the denial of sanctions against Silverstein). It is undisputed that sanctions pursuant to the court's inherent powers (as contrasted with Rule 11 or Section 1927) were not appropriate for negligence or other conduct that falls short of knowing participation in a fraud on the

---

[13]  Although Motivation docketed an appeal of Chief Judge Moore's rulings respecting JTR, Motivation has abandoned that aspect of its appeal by failing to brief it on appeal. *See*, *e.g.*, *Mendoza v. U.S. Atty. Gen.*, 327 F.3d 1283, 1286 n.3 (11th Cir. 2003). Motivation similarly failed to pursue in this Court other unfavorable trial court rulings, such as the district court's holding that Appellees were not bound by findings made with respect to JTR and Miscovich in proceedings in which Appellees did not participate.

[14]  As reflected in Appellees' Brief, the legal error in sanctioning JTR was compounded by the procedural irregularity that the First Sanctions Hearing was conducted without JTR being represented by "conflict-free" counsel. (*See* Appellees' Brief at n.25). Motivation offers no response.

court. Inasmuch as Chief Judge Moore sanctioned JTR only for the four-month delay in disclosing information to the court (which plainly was the responsibility of Record Counsel, and subject to review pursuant to Rule 11 and Section 1927), there was no basis to sanction Silverstein for that conduct pursuant to the court's inherent powers.

## B. The District Court Erred in Invading the Attorney-Client Privilege and Work-Product Immunity

Inasmuch as the only order compelling production of privileged material was made on a post-trial discovery motion by Motivation in connection with its motion for sanctions, the order should be reversed and vacated based on Motivation's lack of standing. Plainly, Motivation was not entitled to any discovery, much less to invade attorney-client privilege and work-product protection, if Motivation lacked standing to seek sanctions in the first instance.

Additionally, and as set forth in Appellees' Brief, there was no legal basis for a blanket invasion of attorney-client privilege and work-product immunity (which also belonged to Appellees) – especially after a magistrate already had reviewed the material *in camera* and concluded that the material did not reflect that any lawyer was acting to facilitate any fraud. (*See* Appellees' Brief at 62, citing DE325 at 6-7).

## C. Judge King Erred in Finding That Silverstein "Substantially Controlled" JTR's Actions in the Admiralty Action

Although Judge King ultimately denied Motivation's motion to sanction Silverstein pursuant to the court's inherent powers, Judge King did find Silverstein "substantially controlled JTR's actions in these proceedings" – which finding was a

predicate to implicate the inherent powers under Judge King's reading of *Helmac*'s dictum. Judge King erred in making that finding.

Judge King ordered Appellees to appear and defend themselves against Motivation's motion for sanctions without providing Appellees any opportunity to take discovery of Motivation or its witnesses (and without so much as the disclosure of any exculpatory evidence unearthed by Motivation) – the same issues raised by Chief Judge Moore in declining to permit Motivation to bring Appellees into the sanctions proceedings. And, of course, there also are the issues of Motivation's lack of standing, the court's lack of inherent powers to sanction Appellees, and the lack of valid service of process upon Appellees. Appellees raised all of these issues in various filings prior to the Hearing. (*See* DE459, DE461, DE478, DE484, DE517 at 6 n3 and 11 n.4). Judge King disregarded or summarily rejected all objections raised by Appellees. (*See* DE488, DE489).

Additionally, the Hearing record reflects (and Motivation does not dispute) that Motivation engaged in various bad faith litigation tactics in connection with its efforts to obtain sanctions against Appellees, including, but not limited to, (i) purposefully delaying its request for the issuance of an OSC until after Motivation conducted discovery, and not deposing Silverstein, in order to preclude Appellees from participating in the discovery process or "getting their story out" before the district court in connection with the First Sanctions Hearing before Chief Judge Moore, (ii) violating the Hobbs Act and blackmail statutes by telling witnesses that they could

face indictments if they did not cooperate with Motivation, (iii) improperly informing witnesses they might avoid both civil and criminal liability if they cooperated with Motivation's efforts, and (iv) attempting to coerce a number of persons (including JTR's Record Counsel, Sullivan, and Appellees' co-counsel from the Delaware Litigation) to sign a false Stipulation containing statements of "fact" designed to aid Motivation's efforts to sanction Silverstein in consideration of Motivation's agreement to refrain from pursuing sanctions against them. (*See generally* Appellees' Motion for Sanctions on Appeal at 10-11; Reply in Support of Appellees' Motion for Sanctions on Appeal at 2-3).

Even with this absence of due process, and with Motivation's bad faith litigation tactics, Judge King concluded that there was no evidence that Silverstein knowingly participated in a fraud on the court – mainly because Silverstein did not do so. But, the mere fact that Silverstein ultimately prevailed on the merits of Motivation's sanctions effort does not remedy the lack of due process in the proceedings below. As such, while Appellees are entitled to an affirmance of the district court's denial of sanctions (inasmuch as there was no basis to grant them), Silverstein is entitled to have the fact-finding that he "substantially controlled" the Admiralty Action reversed and vacated in order to remove any potential stain on his reputation. *Accord Conwill v. Greenberg Traurig, L.L.P.*, 448 Fed. App'x 434, 436–37 (5th Cir. 2011) (noting that "a party may be sufficiently aggrieved by a favorable

judgment to appeal it" where "the judgment itself contains prejudicial language on issues immaterial to the disposition of the case").

Another error in Judge King's finding is that the Hearing record (developed without any discovery by Silverstein) does not support Judge King's conclusion that Silverstein "substantially controlled" the Admiralty Action, in any event. Rather, the Hearing record reflects that Silverstein, as referring counsel who lacked experience in Admiralty matters, had no power or authority to compel Record Counsel to do anything (much less anything with which Record Counsel disagreed), and consistently deferred to Record Counsel after expressing his views. By failing to compare Silverstein's actions with those of Record Counsel, Judge King erred in treating "input" as "control."

Although Judge King characterized the evidence supporting his conclusion that Silverstein "substantially controlled" the litigation as "overwhelming," the only evidence Judge King actually identified consisted of (i) the fact that Horan's engagement letter required Silverstein's consent, as JTR's "general outside counsel,"[15] before Horan could commence a lawsuit, engage an expert, or settle a lawsuit on behalf of JTR, (ii) Silverstein sent a number of emails (characterized by Judge King as

---

[15]     As explained in footnote 10 to the Appellees' Motion for Sanctions on Appeal, filed herein on June 22, 2016, Motivation (but not Judge King) repeatedly confused Silverstein's status as "general outside counsel" to JTR with JTR's "General Counsel" – which is a term of art for the most senior in-house attorney at a corporation, and which did not describe Silverstein's relationship to JTR.

"countless") to Record Counsel, and (iii) Silverstein "forb[ade] the filing of various reports in this case,[16] draft[ed] and revis[ed] pleadings and motions in this case, [and] participat[ed] in trial strategy discussions." (DE568 at 55). As the Hearing record (cited below) reflects, however, the following facts are undisputed and overwhelmingly prove that Silverstein lacked "substantial control" over the Admiralty Action:

- Even though it was contrary to their personal interests to do so, both Horan and Siracusa acknowledged in their testimony their clear understanding that they (and not Silverstein) had the final say and ultimate responsibility for all filings and decisions in the Admiralty Action;

- Many contemporaneous mails from Record Counsel include statements that they, and not Silverstein, were in control of the Admiralty Action;

---

[16]    Silverstein respectfully takes issue with Judge King's finding that Silverstein "forbade" the filing of various reports. In fact, Silverstein lacked any power to "forbid" the filing of any report Record Counsel determined to file – as Horan testified, and Silverstein's contemporaneous emails reflect. (*See* DE543 at 132, 135-36, 149, DX12, DX14, M2-9; *see also* M6 at ¶ 29). As referring counsel, who was not Record Counsel, Silverstein was privileged to make whatever arguments to Record Counsel that Silverstein believed to make sense, and it was the responsibility of Record Counsel to decide whether those arguments were consistent with their understanding of their non-delegable obligations as Record Counsel. Indeed, the very fact that Record Counsel, and not Silverstein, had the non-delegable responsibility for deciding how to proceed, allowed Silverstein to be less conservative than Record Counsel in advancing various ideas, with comfort and confidence that Record Counsel, who have greater knowledge of the applicable rules and precedents will, in the end, make the right decisions. It cannot be that Silverstein can be sanctioned for advancing such ideas, which he had no power or other ability to effectuate. And, the fact that Silverstein argued against filing reports (including the First Status Report, which was filed over Silverstein's objection) does not amount to his "forbidding" their filing.

- Many of Silverstein's contemporaneous emails expressly acknowledge his lack of control over the Admiralty Action;

- There were numerous instances in which Record Counsel (both Horan and Siracusa) took material actions in the Admiralty Action without even consulting Silverstein;

- There were instances in which Record Counsel (both Horan and Siracusa) acted contrary to Silverstein's expressed views;

- None of the three specified actions in Horan's engagement letter for which Silverstein's consent was required were pertinent to Motivation's motion for sanctions; and

- There is no record that Silverstein's consent was required for any action under Siracusa's engagement letter;

*See* Appellees' Brief at 11, 14 n.3, 23 n.8, 26-28, 30-35, 51-54.

Plainly, this is not a record of outside counsel who "substantially controlled" the Admiralty Action – certainly not to such an extent that he could be sanctioned pursuant the court's inherent powers for the actions or filings of Record Counsel. While Record Counsel may have accepted Silverstein's reasoning as persuasive in some instances, Record Counsel indisputably had the ultimate power, authority, and responsibility to conduct the Admiralty Action as they deemed appropriate, and Record Counsel (and not Silverstein) had the entirety of the "control" over the Admiralty Action.

## **CONCLUSION**

For reasons stated in Appellee's briefs (and motion papers), Appellees respectfully request that the Court (i) affirm the denial of Motivation's Sanctions Motion, (ii) reverse the various rulings challenged by Appellees' Cross-Appeal and vacate those rulings *nunc pro tunc* based on the district court's lack of jurisdiction and power to grant them, and (iii) award Appellees' double their legal fees and expenses for being forced to defend Motivation's frivolous appeal.

Respectfully submitted,

COFFEY BURLINGTON, P.L.

By:   **/s/ Jeffrey B. Crockett**
       Jeffrey B. Crockett
       Florida Bar No. 347401
       jcrockett@coffeyburlington.com
       2601 South Bayshore Drive
       Penthouse
       Miami, Florida  33133
       Telephone:  (305) 858-2900
       Facsimile:   (305) 858-5261

*Counsel for Young Conaway Stargatt &*
*Taylor, LLP and Bruce L. Silverstein, Esq.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of 14-point font pursuant to

Fed. R. App. P. 32(a)(5).  This brief also complies with type-volume word limitation

pursuant to Fed. R. App. P. 28.1(e)(2)(B)(i), because it contains 6,985 words,

excluding the parts of the brief exempted by this Rule.

By:   **/s/ Jeffrey B. Crockett**
Jeffrey B. Crockett

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on September 28, 2016, on all counsel or parties of record on the Service List below.

By: __/s/ Jeffrey B. Crockett__
Jeffrey B. Crockett

## SERVICE LIST

Arthur E. Lewis, Jr., Esq.
Marlow V. White, Esq.
LEWIS & WHITE, PLC
222 W. Georgia Street
P.O. Box 1050
Tallahassee, FL 32301
mvw@lewisandwhite.com
lawlaw@polaris.net

*Counsel for Appellant Motivation, Inc.*

Ken Sukhia, Esq.
SUKHIA LAW GROUP, PLC
902 N. Gadsden St.
Tallahassee, Florida 32303
ksukhia@sukhialawfirm.com

*Counsel for Appellant Motivation, Inc.*