IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 15-14132

JTR ENTERPRISES, LLC,
a Delaware Limited Liability Company,

*Plaintiff-Appellee,*

v.

YOUNG CONAWAY STARGATE & TAYLOR;
BRUCE L. SILVERSTEIN; PAUL D. SULLIVAN,

*Respondents-Appellees/Cross-Appellants*

v.

MOTIVATION, INC.

*Claimant-Appellant/Cross-Appellee*

**REPLY BRIEF OF APPELLEE/CROSS-APPELLANT
PAUL D. SULLIVAN**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Stephen F. Rosenthal
Robert C. Josefsberg
John Gravante, III
PODHURST ORSECK, P.A.
SunTrust International Center
One SE 3rd Avenue, Suite 2700
Miami, Florida 33131
305-358-2800/305-358-2382 (fax)
srosenthal@podhurst.com
***Counsel for Paul Sullivan***

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT


Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-2(b), Plaintiff/Appellee Sullivan hereby certifies that the CIPs filed in the briefs previously filed in this appeal are correct.


*s/    Stephen F. Rosenthal*
Stephen F. Rosenthal

**Podhurst Orseck, P.A.**
One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# TABLE OF CONTENTS

**PAGE**

ARGUMENT ...........................................................................................................1

I.  THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING
    SULLIVAN'S SANCTIONS CLAIMS AGAINST MOTIVATION AND ITS
    COUNSEL WITHOUT ADDRESSING ESSENTIAL ELEMENTS OF THOSE
    CLAIMS. .......................................................................................................2

    A.   Motivation Fails to Address the Issues Sullivan Raises. ......................2

    B.   Motivation's One-Sided Presentation of the Record Cannot
         Substitute for Contested and Unresolved Issues of Fact.......................6

II. THE UNAUTHORIZED EXTRA-TERRITORIAL SERVICE OF PROCESS
    DEPRIVED THE DISTRICT COURT OF THE ABILITY TO EXERCISE
    PERSONAL JURISDICTION OVER SULLIVAN. ....................................................13

CONCLUSION ....................................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

PAGE

## CASES

*Cooter & Gell v. Hartmarx Corp.*,

496 U.S. 384 (1990)........................................................................................3

*De Gazelle Grp., Inc. v. Tamaz Trading Establishment*,

817 F.3d 747 (11th Cir. 2016) ...............................................13, 14, 15, 18, 19

*Ehlert v. Singer*,

245 F.3d 1313 (11th Cir. 2001) ..................................................................4, 6

*Fid. Nat'l Fin., Inc. v. Friedman*,

No. CIV 03-1222 PHX RCB, 2010 WL 960420.....................................14, 15

*Little v. T-Mobile USA, Inc.*,

691 F.3d 1302 (11th Cir. 2012) ..................................................................12

*McGuire v. Sigma Coatings, Inc.*,

48 F.3d 902 (5th Cir. 1995) ........................................................................15

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,

484 U.S. 97 (1987)...............................................13, 15, 16, 18, 19

*Prewitt Enters., Inc. v. OPEC*,

353 F.3d 916 (11th Cir. 2003) ...............................................13, 14, 15, 18, 19

**Podhurst Orseck, P.A.**
One SE 3ʳᵈ Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

*Pullman-Standard v. Swint*,

    456 U.S. 273 (1982)......................................................................................3, 8

*S.E.C. v. Ross*,

    504 F.3d 1130 (9th Cir. 2007) ......................................................................14

*Sprint/United Mgmt. Co. v. Mendelsohn*,

    552 U.S. 379 (2008).........................................................................................3

*Stewart v. Dep't of Health & Human Servs.*,

    26 F.3d 115 (11th Cir. 1994) ..........................................................................7

*Thompson v. RelationServe Media, Inc.*,

    610 F.3d 628 (11th Cir. 2010) ...........................................................3, 4, 6, 12

*Waffenschmidt v. MacKay*,

    763 F.2d 711 (5th Cir. 1985) ............................................................17, 18, 19

## RULES

Fed. R. Civ. P. 4 ..............................................................................................18, 19

Fed. R. Civ. P. 4.1 ...........................................................................................*passim*

**Podhurst Orseck, P.A.**

One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

# ARGUMENT

Motivation's response to Sullivan's cross-appeal of the denial of his motion for sanctions against Motivation and its counsel consumes considerable space but does precious little to blunt the thrust of the discrete points of legal error Sullivan raised.

On the subject of the omissions from the district court's analysis in its order denying Sullivan's motion for sanctions, Motivation fails to mount any relevant response at all. It fails to confront Sullivan's points that the district court analyzed only two of the three elements that were necessary before it could declare Motivation's sanctions claim against him to have been non-frivolous, or that the district court did not address the sanctions claim directed at Motivation's counsel, Mr. Lewis. Instead, Motivation seeks to engage in a debate over the evidence bearing on those points about which the district court has *not* even made findings. That is a fundamentally mistaken approach on appeal, and the Court should shun the invitation to engage in fact-finding in the first instance. The absence of rulings on those issues necessitates a remand to the district court.

On the threshold issue of the court's exercise of jurisdiction over Sullivan, which bears upon the order that Motivation challenges in the main appeal, Motivation's defense of the district court's reliance upon its inherent powers as a substitute for statutory or rule-based authority for extra-territorial service of

1

process comes up short. Binding precedent makes clear that substantial compliance with the formal requirements of the rules or statutes authorizing service of process is a prerequisite to an exercise of personal jurisdiction. No such authority permitted service of the Order to Show Cause upon Sullivan in Hawaii, a defect that deprived the district court of personal jurisdiction to consider sanctions against him. That fault moots Motivation's crusade for a reversal of the district court's order denying its motion for sanctions against Sullivan.

**I.**      **THE DISTRICT COURT ABUSED ITS DISCRETION IN DISMISSING SULLIVAN'S SANCTIONS CLAIMS AGAINST MOTIVATION AND ITS COUNSEL WITHOUT ADDRESSING ESSENTIAL ELEMENTS OF THOSE CLAIMS.**

**A.      Motivation Fails to Address the Issues Sullivan Raises.**

Motivation's reply brief seems oblivious to the carefully gauged scope of Sullivan's cross-appeal. Sullivan raised only two particular omissions in the district court's analysis: (1) its lack of any treatment of the bad-faith prong of the applicable standard, without a finding on which it cannot be concluded that Sullivan's claim that Motivation acted in bad faith in pursuing inherent powers sanctions against *him* should fail; and (2) the absence of any analysis of Sullivan's sanctions claim against Motivation's *counsel*. The cross-appeal seeks the limited and appropriate relief of a "remand so that the claim can be considered using a legally proper analysis." (Principal and Response Brief of Appellee/Cross-Appellant Paul D. Sullivan ("S.Br.") at 50). Notwithstanding Sullivan's limited

2

focus, Motivation seems to ignore entirely the two deficiencies Sullivan raises and instead invites the Court to affirm based upon a review, in the first instance, of factual disputes the district court did not address. This approach is fundamentally misguided.

Well established and binding precedent holds that the trial courts, not the courts of appeals, are to resolve in the first instance any legally essential factual determinations. "When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982). This Circuit has recognized that the district courts are "'better situated'" than the appellate courts in making such factual determinations. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 638 (11th Cir. 2010) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990)). "Given the district court's familiarity with the case and the parties, the district court is in a better position to make these determinations in the first instance, explicitly and on the record." *Id.* (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)). Indeed, the Eleventh Circuit's rationale in *Thompson* for remanding a Rule 11 sanctions claim for the district court's initial fact-finding could not be more suitable to the circumstances here:

**Podhurst Orseck, P.A**.

One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

> Additionally, we recognize the practical reality that this appeal arises from complex factual circumstances that have not been organized in such a manner to facilitate efficient sanctions review. As a result, prior to engaging in a Rule 11(b) analysis, we would first have to unravel the dense record and examine it in a way that no other issue in this case requires us to do. This task would require us to obtain a level of familiarity with the parties and the evidence that the district court already has; as a result, we would end up replicating much of the work that the district court has already completed. This is not a wise use of judicial resources. The better solution, from a practical standpoint, is for us to carefully and promptly decide the issues on appeal, and then to remand to the district court to address any outstanding fact-finding tasks. Expeditiousness is every bit as important to a well-functioning judiciary as is thoroughness.

*Thompson*, 610 F.3d at 639. *See also Ehlert v. Singer,* 245 F.3d 1313, 1320 (11th Cir. 2001) (remanding for fact-finding where the district court failed to make necessary Rule 11 factual findings in a securities fraud action).

Both of the deficiencies in the district court's dismissal order require factual determinations based on extensive record evidence involving hotly disputed views of the evidence. Again, the first unaddressed issue involves whether Motivation knew or was reckless in failing to acknowledge that it was unlikely to satisfy its burden of proving by clear and convincing evidence that Sullivan acted in bad faith. The second issue implicates a discretionary judgment as to whether Motivation's counsel acted in bad faith through vexatious litigation tactics.

Rather than acknowledging the two narrowly identified analytic flaws in the district court's dismissal which Sullivan actually raised, Motivation mischaracterizes Sullivan's argument in this cross-appeal as though it challenges

4

the merits of his claim for inherent-powers sanctions against Motivation. (Appellant/Cross-Appellee's Reply and Answer Brief ("M.Ans.Br.") at 36). By wrongly asserting that "Sullivan challenges the trial court's denial of his motion for sanctions against Motivation and its counsel, *claiming Motivation's motion against him was baseless*," *id.* (emphasis added), Motivation subtly seeks to shift the focus of the cross-appeal from the analytic gaps in the district court's opinion to the as-yet unaddressed merits of Sullivan's claims for sanctions. That rhetorical maneuver fails to address the discrete issues raised in the cross-appeal. The district court made no findings on the question of whether Motivation could have met its burden of showing that Sullivan acted in "bad faith" during the admiralty litigation – a positive answer to which is a prerequisite to dismissing Sullivan's sanction claim against Motivation. (S.Br. at 52). It is impossible to appeal the merits of a finding that the district court never made.

Motivation's errant focus results in seventeen pages of briefing that are utterly superfluous. Its arguments regarding the evidence bearing on the elements of substantial participation and substantial interest (M.Ans.Br. at 40-44) are irrelevant because Sullivan did not cross-appeal the district court's adverse findings on those issues. And Motivation's lengthy arguments about the evidence bearing on what Sullivan supposedly knew and did (*id.* at 44-56), which bear on

5

the question of Motivation's basis for claiming he acted in bad faith, need to be made to the district court, because it omitted to make any findings on this element.[1]

Whether the district court's analytical omissions when dismissing Sullivan's sanctions motion constitute reversible abuses of discretion implicate pure questions of law. This Court need not and should not wade into the dense evidentiary record in this case in the first instance to resolve either issue. Instead, as *Thompson* instructs, the Court should remand this matter to the district court to address for the first time whether Motivation had a non-frivolous basis to believe that Sullivan acted in bad faith and whether Motivation's counsel engaged in sanctionable litigation misconduct. *See* 610 F.3d at 638; *see also Ehlert*, 245 F.3d at 1320.

### B. Motivation's One-Sided Presentation of the Record Cannot Substitute for Contested and Unresolved Issues of Fact.

To the extent that Motivation is asking the Court to overlook the district court's omissions and resolve for itself the ultimate merits questions at issue, it does so based on a phony premise. Motivation argues that the facts it cites in support of its claim that Sullivan acted in bad faith are "true" and "based on substantial *un-contradicted* evidence in the record at the time the [district] [c]ourt dismissed Motivation's claim against Sullivan." (M.Ans.Br. at 36, 38 (emphasis

---

[1] Tellingly, Motivation nearly reproduces this section of argument verbatim from the majority of its response to Sullivan's motion for sanctions in the district court. (Doc. 563 at 3-14).

**Podhurst Orseck, P.A.**
One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

altered)).[2]  Motivation is patently wrong to suggest that there are no remaining unresolved factual disputes pertinent to the question of whether it had a sufficient basis to assert that Sullivan acted in bad faith.  If anything, as Sullivan pointed out in his response to Motivation's main appeal, the district court's factual findings at the end of the Sanctions II trial, which credited attorneys Horan and Siracusa's testimony that Sullivan did not direct or control the litigation but only sought the truth regarding the emeralds, implicitly concluded that Sullivan did *not* act in bad faith.  (S.Br. at 26-27).

Without getting into every one of Motivation's conclusory allegations masquerading as established fact and other mischaracterizations of the evidence, we will address a few critical evidentiary disputes solely to assure the Court that the record evidence cited by Motivation (but not addressed by the district court) is anything but "beyond any doubt." *Stewart v. Dep't of Health & Human Servs.,* 26 F.3d 115, 115–16 (11th Cir. 1994) ("Although this court may hear an issue not raised in the lower court when the proper resolution is beyond any doubt, issues

---

[2]  This contention is also flawed insofar as it asserts that the pertinent evidence applicable to the question of whether Motivation had a good faith basis to bring its sanctions claim against Sullivan encompasses "the record *at the time the Court dismissed Motivation's claim against Sullivan*." (*Id*. (emphasis Motivation's)). Motivation is plainly not entitled to the benefit of 20-20 hindsight.  The issue that Sullivan's sanctions claim raises is whether Motivation had a good-faith basis *at the time it initiated the sanctions proceeding against him*, which it did by filing its Amended Motion for Sanctions.  (Doc. 407 (filed February 28, 2014)).

7

involving the resolution of factual questions can never be beyond doubt."); *see Pullman-Standard*, 456 U.S. at 291-92.

Motivation argues in several places that Sullivan participated in concealing Miscovich's fraud when he testified on JTR's behalf at the JTR/Miscovich sanctions trial even though he had just learned that the jeweler, Jorge Rodriguez, had sold emeralds to Miscovich. (M.Ans.Br. at 39, 44, 50-56). In furtherance of this argument, Motivation makes several misrepresentations of the record evidence.

First, Motivation insinuates that Sullivan lied by not disclosing in his testimony at the JTR/Miscovich sanctions trial that the jeweler sold 80 pounds of emeralds to Miscovich. This assertion is not supported by the evidence regarding what Sullivan knew at the time he testified. To be sure, the night before Sullivan testified, he was present when Siracusa and his law partner learned from a call from the jeweler's attorney that the jeweler intended to testify that Miscovich bought "a bunch of emeralds from his store." (T. Day 2 at 263). However, the jeweler had previously told Siracusa's paralegal a completely different story: that he had only sold two emerald rings to Miscovich. (*Id.*) The jeweler had even furnished the receipts to corroborate that story. (Doc. 526-2 at 181-83). Motivation cannot point to any evidence that Sullivan knew *at the time he testified* that the jeweler, in fact, had sold 80 pounds of emeralds to Miscovich. Indeed,

**Podhurst Orseck, P.A**.
One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

none of respondents to the sanctions hearing could have known what the jeweler's sworn testimony would actually be until he took the stand – the day after Sullivan testified. Viewed properly in context, Sullivan was forthcoming in his testimony. Consistent with his understanding of what he had just learned about the jeweler the night before, Sullivan conceded that "whether or not Jay made the mistake of going down and buying stuff to add to the treasure in some foolish desire to mix it in, that's a possibility." (Doc. 562-2 at 254). The point here is not to invite the Court to resolve this dispute, only to demonstrate that the factual dispute exists and was not addressed by the district court.

Second, Motivation contends that Sullivan's testimony regarding his belief that Miscovich found a treasure is evidence that Sullivan knew of and intended to conceal Miscovich's fraud during the JTR/Miscovich sanctions trial. (M.Ans.Br. at 44). Motivation, however, takes this testimony out of context, skirting around Sullivan's other testimony where he stated that "I could be wrong" (Doc. 526-2 at 254), conceded that Miscovich possibly "made the mistake of going down and buying stuff to add to the treasure in some foolish desire to mix it in" (*id.*), and acknowledged that "it's a possibility that Jay didn't find a treasure at all" (*id.* at 255). Motivation also completely ignores Siracusa's testimony (which the district court credited in dismissing the claims against Sullivan) that upon learning of the jeweler's testimony, Sullivan insisted that the jeweler come and tell the judge what

**Podhurst Orseck, P.A**.
One SE 3ʳᵈ Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

happened regardless of the consequences. (T. Day 2 at 271). Motivation's argument that Sullivan's testimony was "carefully calculated" to conceal what he knew about the jeweler's sale of emeralds (M.Ans.Br. at 56) is unfounded and inconsistent with Siracusa's credited testimony to the contrary. Again, a dispute as to this issue exists, and the district court has yet to address it.[3]

Third, Motivation relies on the affidavit of one of its former attorneys, John Tuthill (Doc. 563-3), to insist that JTR's attorneys tried to strike a deal with Tuthill to release the jeweler from subpoena after learning that he would likely testify unfavorably to JTR. Siracusa directly refuted this assertion when Motivation first lodged it against him in the district court. (Doc. 566-1). The record from the JTR/Miscovich sanctions trial also confirms the opposite—that Siracusa sought the district court's assistance with enforcing the jeweler's subpoena when he was concerned that the jeweler might not appear to testify. (Doc. 526-2 at 148-50). He specifically informed the district court that "it's critical, probably for the Court and both sides to hear from this guy." (*Id.* at 150). Notwithstanding that Sullivan, a non-lawyer, had no authority to issue or release anyone from a subpoena and is not mentioned in any of the evidence Motivation cites, the record evidence belies Motivation's insinuation that Sullivan was in cahoots with Siracusa to keep the

---

[3]  Motivation misleadingly suggests that Judge Moore previously "noted" that Sullivan "orchestrated" the bad-faith litigation. (M.Ans.Br. at 57). That characterization is completely erroneous.

**Podhurst Orseck, P.A**.

One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

jeweler's testimony from being heard.  This, too, is not an issue this Court can or should resolve in the first instance.

Fourth, apart from Motivation's unfounded insinuations regarding Sullivan's testimony at the JTR/Miscovich sanctions trial, it repeats its mischaracterizations of the import of Horan's testimony that he and Sullivan engaged in "conservatively, a hundred hours of conversations" (T. Day 1 at 76) and various email communications sent to Sullivan.  (M.Ans.Br. at 44-50).[4]  Sullivan has already thoroughly addressed in his response to Motivation's main appeal that none of these conversations or email communications prove that he was part of Miscovich's fraud.  (S.Br. at 35-40, 43-46).  Motivation presented all of these email communications in support of its sanctions case against Sullivan, which the district court considered before concluding that Motivation had presented "no evidence" to support its claims.  (Doc. 528 at 3).[5]

---

[4]  Although Motivation references this evidence in its discussion of the substantial-involvement and interest elements, its contentions seem to blend into the element of bad faith.

[5]  It should be noted that Motivation surreptitiously crosses the tracks separating its appeal from the cross-appeal when it attacks the district court's finding in its dismissal order of *Motivation's* sanctions' claim *against Sullivan* that the majority of the emails show only that "Sullivan's email address was copied." (M.Ans.Br. at 47 (quoting but not citing Doc. 528 at 3)). Based on the few cases Motivation has cited, it seems to suggest that this finding is erroneous because the district court did not *also* explicitly state that it found that Sullivan actually read the emails, and consequently, conclude that he knew about Miscovich's fraud.  Motivation did not raise this as an issue in its initial brief of its appeal of the order containing this

11

Given Motivation's and Sullivan's sharply divergent views of the record evidence pertaining to the unresolved bad faith element, including testimony of witnesses with whom the district court is quite familiar, "[t]he better solution, from a practical standpoint, is for [this Court] to carefully and promptly decide the issues on appeal, and then to remand to the district court to address any outstanding fact-finding tasks." *Thompson*, 610 F.3d at 639.

The same disposition is appropriate for Sullivan's cross-appeal of the order dismissing his claim against Motivation's counsel. Motivation's defense of its having targeted Sullivan for sanctions based on his "deep pockets" (M.Ans.Br. at 56-57) neglects other aspects of Sullivan's claim that Motivation's counsel vexatiously litigated against him. Indeed, Sullivan's primary contention concerned Motivation's counsel's bad faith in repeatedly misrepresenting Sullivan's conduct in court filings. (*See* S.Br. at 58-59). Sullivan did not rely on the "deep pockets" emails as direct evidence of Motivation's and its counsel's bad faith, but rather argued that the emails revealed their financial motivation for going after Sullivan which, in turn, bears on the ultimate question of whether their misrepresentations

---

finding and, therefore, cannot do so here in its response brief to Sullivan's cross-appeal of a different ruling arising out of an entirely different proceeding. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012). Nevertheless, any inferences which might be reasonably drawn from Sullivan's reading of these various emails would still require an extensive evidentiary analysis of the contents of the emails. Sullivan is separately filing a motion to strike improper argument from Motivation's reply brief bearing on the main appeal.

12

were intentional as opposed to merely negligent as claimed. The district court's assessment of this situation remains unknown because it never addressed this distinct claim for sanctions. Under these circumstances, a remand is necessary so that the district court can also address this fact-bound issue.

## II. THE UNAUTHORIZED EXTRA-TERRITORIAL SERVICE OF PROCESS DEPRIVED THE DISTRICT COURT OF THE ABILITY TO EXERCISE PERSONAL JURISDICTION OVER SULLIVAN.

Sullivan's cross-appeal of the order denying his motion to quash service impacts the order Motivation challenges on appeal, granting Sullivan's motion for involuntary dismissal of Motivation's claim for sanctions against him. (S.Br. at 19 n.7).

Motivation's contention that the district court correctly concluded that service of Sullivan with the Order to Show Cause by the U.S. Marshal in Hawaii permitted its exercise of personal jurisdiction over Sullivan under its inherent powers cannot be reconciled with Supreme Court and Eleventh Circuit precedent. *See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104 (1987); *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016); *Prewitt Enters., Inc. v. OPEC*, 353 F.3d 916, 925 (11th Cir. 2003). As each of these binding decisions makes clear, compliance with the formal requirements for service of process is a necessary prerequisite to a federal court's exercise of personal jurisdiction. *See Omni Capital*, 484 U.S. at 104; *De*

13

*Gazelle*, 817 F.3d at 750; *Prewitt*, 353 F.3d at 925. In other words, in the absence of properly authorized service of process, the district court was without the means to assert personal jurisdiction over Sullivan. *See also S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) ("[S]ervice of process is the means by which a court asserts its jurisdiction over the person.").

Contrary to Motivation's endorsement of the district court's conclusion that the actual notice provided to Sullivan was alone sufficient, this Court has held that due process requires actual notice *plus* substantial compliance with the formal authorization requirements for the service of process before a court can properly exercise personal jurisdiction. *Prewitt*, 353 F.3d. at 924-25; *De Gazelle*, 817 F.3d at 750. In accordance with circuit precedent, effective service of process of the district court's Order to Show Cause to Sullivan required a U.S. Marshal to serve Sullivan "within the territorial limits of the state where the district court is located and, if authorized by federal statute, beyond those limits." Fed. R. Civ. P. 4.1(a).[6] The jurisdictional defect stems from the fact that Sullivan was served by a U.S. Marshal in Hawaii, and no federal statute authorized extra-territorial service upon him. The service of the order upon Sullivan was therefore "clearly not in

---

[6] No one has disputed that Rule 4.1 governed service of process of the Order to Show Cause to Sullivan. *See also Fid. Nat'l Fin., Inc. v. Friedman*, No. CIV 03-1222 PHX RCB, 2010 WL 960420, at *6 (D. Ariz. March 15, 2010) ("Because the process here is an OSC [order to show cause] and not a summons, the court must look to Rule 4.1(a).").

14

substantial compliance with the requirements of" Rule 4.1(a), thereby precluding the district court's exercise of jurisdiction over him. *Prewitt*, 353 F.3d at 925. *See also De Gazelle*, 817 F.3d at 750 (finding that actual notice of a lawsuit was insufficient to "confer personal jurisdiction on a defendant when it has not been served in accordance with Rule 4"); *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 906-07 (5th Cir. 1995) (finding that the requirement for proper service of a summons under Rule 4, which entails more than just actual notice, "applies with at least as great force to a proceeding to consider sanctions against" a non-party).

*Prewitt* cannot be effectively distinguished on the ground Motivation urges – that the case involved service under a different subsection of the Rule. The fundamental principle undergirding all service of process rules is the same:

> [B]efore a court may exercise personal jurisdiction over a defendant, there must be *more than* notice to the defendant … [t]here also must be a *basis* for the defendant's amenability to service of summons. Absent consent, this means there must be *authorization* for service of summons on the defendant.

*Id.* at 924-25 (quoting *Omni Capital*, 484 U.S. at 104) (emphasis in *Prewitt*). This principle extends with equal vigor to non-parties as to defendants. *See, e.g., McGuire*, 48 F.3d at 906-07 (no personal jurisdiction over a non-party where the formal requirements of service of process under Rule 4 had not been satisfied in an inherent-powers sanctions proceeding); *Fidelity*, 2010 WL 960420, at *4 (no basis

**Podhurst Orseck, P.A**.

One SE 3ʳᵈ Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

to exercise personal jurisdiction against non-parties who had not been served with an order to show cause in compliance with Rule 4.1(a)).

The Supreme Court's decision in *Omni Capital* strongly counsels against the district court's reliance upon its inherent powers to circumvent the territorial limitations on service of process in Rule 4.1(a). In *Omni Capital*, after finding that service on two intended foreign-based defendants was not authorized under either the operative service of process rule (Rule 4(e)) or the pertinent federal statute, the Court specifically "decline[d] to embark on th[e] adventure" of creating its own rule which would have authorized service of process in the underlying litigation. 484 U.S. at 104-08. The Court surmised that even if it had the power to fashion its own rule for service of process, about which it expressed doubt, "it would consider it unwise for a court to make its own rule authorizing service of summons." *Id.* at 109. The Court explained why:

> It seems likely that Congress has been acting on the assumption that federal courts cannot add to the scope of service of summons Congress has authorized. This Court in the past repeatedly has stated that a legislative grant of authority is necessary. Indeed, . . . "the weight of authority, both in the cases and in the commentary," considers statutory authorization necessary to a federal court's service of summons.

*Id.* at 109-10 (internal citation omitted). It reasoned that this Congressional assumption, the statutory enactments, and judicial decisions based thereon "argue strongly against devising common-law service of process provisions." *Id.* at 110.

16

While the Court was cognizant of "the consequences of the inability to serve process" on the two intended defendants, it concluded that the responsibility for creating a rule to remedy this situation going forward "better rests with those who propose the Federal Rules of Civil Procedure and with Congress." *Id.* at 111. In the case at bar, the district court failed to observe similar restraint in resorting to its inherent powers to fashion a new channel for service of process beyond that authorized by Rule 4.1(a).

Motivation's argument that the Fifth Circuit's decision in *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985), supports the district court's conclusion that it had authority to exercise personal jurisdiction over Sullivan fails to recognize that compliance with the formal requirements of service of process is a prerequisite to the assertion of such jurisdiction. It may be helpful to think of these distinct but related concepts in this manner: proper service of process is the key that unlocks the door to the courthouse; personal jurisdiction can open that door only after it has been unlocked. *Waffenschmidt* did not involve a situation, like here, where the door was never unlocked.

In *Waffenschmidt*, the district court had entered a temporary restraining order and preliminary injunction prohibiting the defendant and any person acting in concert with him from, among other acts, transferring any funds acquired from the plaintiffs. 763 F.2d at 714. After the defendant violated the order by transferring

**Podhurst Orseck, P.A**.

One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

the funds to three out-of-state non-parties who each had received notice of the court's TRO and injunction, the court issued show cause orders to those non-parties. *Id.* at 714-15. They, in turn, challenged the court's exercise of its jurisdiction. *Id.* at 715.

The Fifth Circuit did not address at the outset whether the service of show cause orders on the out-of-state non-parties was authorized under any particular provision of Rule 4. Instead, it first asked whether a "knowing violation of a court's injunction order by the agent of a party who aids and abets that party's violation of the order permits jurisdiction when no other contacts exist with the forum." 763 F.2d at 715-16. Based on the federal courts' inherent authority to enforce their own "injunctive decrees," the effects of which run nationwide, and to protect their ability to "render a binding judgment," the Fifth Circuit held that "a court may assert jurisdiction over persons who, with knowledge of the court's orders, actively aid and abet an enjoined party." *Id.* at 716, 718-19. This holding speaks to the *basis* for personal jurisdiction but has no bearing on the distinct question regarding the necessity for authorized service of process as a prerequisite to the exercise of that personal jurisdiction.

Although the court in *Waffenschmidt* also addressed whether service could be satisfied on the out-of-state non-parties given Rule 4's territorial limitations, its conclusions are not persuasive in light of *Omni Capital, Prewitt,* and *De Gazelle.*

18

**Podhurst Orseck, P.A**.

One SE 3ʳᵈ Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Indeed, the portion of the *Waffenschmidt* opinion which observed that because the district court had jurisdiction over the out-of-state non-parties as a result of their knowing and participatory violation of the injunctive order, the territorial limitation on service of process under the relevant provision of Rule 4 was not a bar to effective service of process was dictum. *See* 763 F.2d at 720. The Fifth Circuit went on to find that the service of process which had been effectuated on the non-parties actually complied with the pertinent provision of Rule 4 governing extraterritorial service. *See id.* at 720-21. Thus, it was simply unnecessary for the court to decide whether and under what circumstances it had the power to modify or halt compliance with the rules of service of process. In any event, the Supreme Court's contrary holding two years later in *Omni Capital* casts serious doubt on the ongoing validity of this portion of the Fifth Circuit's decision in *Waffenschmidt*.

Ultimately, *Waffenschmidt* has no bearing on the Supreme Court's and this Circuit's precedent requiring effective service of process before a federal court can exercise personal jurisdiction. To summarize, effective service of process is a distinct prerequisite that must be met *before* a federal court can exercise personal jurisdiction. *See Omni Capital*, 484 U.S. at 104; *De Gazelle*, 817 F.3d at 750; *Prewitt*, 353 F.3d at 925. And a federal district court is not free to fashion its own common-law rules authorizing service of process. *See Omni Capital*, 484 U.S. at 109-10.

**Podhurst Orseck, P.A**.

One SE 3rd Avenue, Suite 2700, Miami, Florida 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

Accordingly, the invalid service of process on Sullivan precluded any need for the district court to consider whether its inherent powers would have provided a basis for the exercise of personal jurisdiction over him. The absence of personal jurisdiction over Sullivan thus stands as an independent impediment to Motivation's call for a reversal of the district court's order of involuntary dismissal of the sanctions claim against him.

## CONCLUSION

For the reasons articulated in this cross-appeal, the Court should reverse the district court's order denying Sullivan's motion for sanctions against Motivation and its counsel and remand for proper findings on the unaddressed grounds Sullivan has challenged. This Court should also reverse the district court's order denying Sullivan's motion to quash service, the effect of which would be to preclude the relief Motivation seeks in its main appeal.

Respectfully submitted,

_s/ Stephen F. Rosenthal_
Stephen F. Rosenthal
Fla. Bar No. 013158
Robert C. Josefsberg
Fla. Bar No. 040856
John Gravante, III
Fla. Bar No. 617113
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Suite 2700
Miami, Florida 33131
Tel.: 305-358-2800
Fax: 305-358-2382

20

srosenthal@podhurst.com
rjosefsberg@podhurst.com
jgravante@podhurst.com

*Counsel for Paul D. Sullivan*

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 4949 words in the brief.

*s/ Stephen F. Rosenthal*
Stephen F. Rosenthal

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Stephen F. Rosenthal*
Stephen F. Rosenthal

21